(87 Misc. Rep. 199)

SMITH v. MOULD.

(Supreme Court, Equity Term, Cattaraugus County.   October, 1914.)

1. PAYMENT (§ 38*)—APPLICATION—DIRECTION.
    Plaintiff having asked for a payment on principal that would become due on a certain date, and defendant having made the payment, it cannot be claimed that defendant made no direction or request for application of the payment, so as to allow plaintiff to apply it on another debt.
    [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 99–103, 128; Dec. Dig. § 38.*]

2. MORTGAGES (§ 300*)—TENDER OF PAYMENT—REFUSAL—EFFECT.
    A tender by defendant of the amount due on a mortgage, subject to which he bought the land, but which he did not assume, if valid and refused by plaintiff, holder of the mortgage, discharged the lien and relieves defendant of all liability, though the tender is not kept good, which is only necessary in case of a debt of the one making tender.
    [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 876–888; Dec. Dig. § 300.*]

3. TENDER (§ 17*)—TIME TO ACCEPT OR REFUSE.
    One to whom a tender is made, claiming the amount is insufficient, is not required to immediately accept or refuse, but may have a reasonable time to examine, and calculate and ascertain the amount due.
    [Ed. Note.—For other cases, see Tender, Cent. Dig. § 54; Dec. Dig. § 17.*]

4. MORTGAGES (§ 319*)—TENDER OF PAYMENT—REFUSAL—EVIDENCE.
    Evidence in a foreclosure action held insufficient to show a valid tender and a deliberate and intentional refusal.
    [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 855–863, 875, 913, 1356, 1366; Dec. Dig. § 319.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. MORTGAGES (§ 109*)—CONDITIONAL INVALIDITY—EVIDENCE.

　　Evidence in an action on a mortgage, conditioned to be void if an oil well to be drilled on the premises by defendant failed to produce a certain amount at a certain time, *held* not to show that it so failed.

　　[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 219, 246, 247, 268; Dec. Dig. § 109.*]

Action by John S. Smith against Augusta Hovey Mould to foreclose three mortgages. Judgment for plaintiff.

M. B. Jewell, of Olean, for plaintiff.
George D. Forsyth, of Rochester, for defendant.

BROWN, J. On February 16, 1912, the plaintiff was the owner of a first mortgage upon lands of the defendant, executed by defendant's grantor, one Ham, the payment of which had not been assumed by the defendant; the defendant having purchased the premises subject to the mortgage. The mortgage debt all became due and payable February 11, 1910, and there was due and unpaid on February 16, 1912, the sum of $1,060.99. On the same date the plaintiff was the owner of a second mortgage upon the same premises, executed by the defendant for the sum of $1,000, upon which defendant was personally liable, which became due February 11, 1910. At the same time plaintiff was the owner of a third mortgage upon the same premises, executed by the defendant for the sum of $2,000, which became due February 11, 1912.

[1] On January 29, 1910, the plaintiff wrote to the defendant, stating that he had promised to another the money which would become due in February, but could get along with part of it if defendant would pay the interest, of $240, and $500 on the principal. The defendant thereupon, on February 11, 1910, paid $740, taking a receipt specifying that $240 was for the interest to February 11, 1910, and $500 on principal. It is now claimed by plaintiff that, inasmuch as defendant gave no direction as to where the $500 should be applied at the time of making the payment on February 11, 1910, the plaintiff had the right to apply it as he saw fit; but it is believed, and the finding must be, that the plaintiff was bound to make, and the defendant was entitled to have made, the application of the payment upon the principal of either the first or second mortgages that became due February 10, 1910, and that such application could not be made on the third mortgage. The letter of the plaintiff asks for a payment on the principal that would become due February 10, 1910, and defendant having made that payment, plaintiff cannot now claim that there was no direction or request by the defendant to make application of such payment on the first or second mortgages. Applying such payment on the second mortgage as of February 10, 1910, there was due on that mortgage on February 16, 1912, the sum of $530.50; applying such payment on either the first or second mortgage, there was due on both such mortgages on February 16, 1912, the sum of $1,591.49.

---

On February 16, 1912, the defendant met plaintiff at the door of plaintiff's store in Allegany and stated to plaintiff:

"I have come to pay you the principal and interest on those two mortgages which are now due, one placed on the property by John Ham, of $2,000, and the other, $1,000, by myself; on these mortgages I have paid you $1,000 on the Ham mortgage, and $500 on the mortgage which you own against me. I have brought you this money, $1,061.21, on the first mortgage, and $530.75, which is due, with interest (on the other) up to the present time. Now I have this money, and I tender you this money, Mr. Smith; do you want it?"

The defendant during this conversation held in her hand, extended toward the plaintiff, a quantity of money, stating to the plaintiff that was $1,592. The defendant testifies that the plaintiff, in answer to the inquiry, replied, "No," and walked away. And thereupon the defendant left the plaintiff's store, going across the street, where she remained for an hour and a half, and later left Allegany and returned to her home in Buffalo.

The plaintiff testifies that, when defendant said that she had paid $500 on the second mortgage, he said, "No, I credit the $500 on No. 3;" that then defendant said, "I have $1,590," or something, "here to pay the mortgages." The plaintiff replied, "That is not the amount due; it is $2,000 and something." The defendant had a roll of bills in her hand, and said, "I have $1,590," or something; "do you want this?" The plaintiff said, "I want to consult my attorney before I can decide." The defendant said, "Do you want this?" The plaintiff replied, "When I consult my attorney I can decide." Whereupon defendant spoke to her husband, saying, "Come on," and started to leave the store, when the plaintiff told the defendant he would step to the phone and call his attorney. The defendant continued on her way in leaving the store, when plaintiff said to defendant, "Wait a moment, I want to call my brother;" whereupon defendant said, "Come on," and she and her husband hurried right out of the door. The plaintiff's brother was in an adjoining room.

On April 8, 1912, this action was brought for the foreclosure of the three mortgages, whereby plaintiff claims $1,000 and interest from February 11, 1911, to be due on the first mortgage, $1,000 and interest from February 11, 1911, on the second mortgage, and $1,500 and interest from February 11, 1911, on the third mortgage. The defendant alleges that the tender of $1,061.21 on February 16, 1912, and plaintiff's refusal to accept the same, discharged the lien of the first mortgage upon the real estate in question, and now claims that, inasmuch as defendant never assumed the payment of the first mortgage, she is not liable thereon to the plaintiff; that her real estate has been discharged from the lien of this mortgage; that she was not obliged to keep the tender good, and plaintiff has no remedy against her real estate, and cannot have foreclosure of the first mortgage. The defendant alleges as a defense to the foreclosure of the second mortgage that the tender and refusal discharged its lien on the real estate, that the tender of $530.75 on that mortgage has been kept good by paying that sum after the commencement of this action into court to the credit of the plaintiff, and that no foreclosure of that mortgage can be had.

The fact is that after the alleged tender and refusal on February 16, 1912, the defendant took the $1,592 to Buffalo, depositing the same in the People's Bank on a certificate of deposit in her own name. Subsequently the certificate was cashed, and after the commencement of this action the sum of $530.75 paid to the county treasurer of Cattaraugus county to the credit of the plaintiff, and the balance placed in the Bank of Holland to the credit of defendant's brother.

[2] If it be true that the transaction at plaintiff's store on February 16, 1912, constitutes a valid tender in all of the requisite essentials of the amount due on the first mortgage, then the plaintiff is without remedy in this action thereon. If the defendant did not assume the payment of the first mortgage, then a proper tender of the amount due thereon need not have been kept good in any manner to entitle defendant to a judgment dismissing the complaint as to the first mortgage. Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145; Nelson v. Loder, 132 N. Y. 288, 30 N. E. 369. There is no debt of the defendant to the plaintiff by virtue of this first mortgage, necessitating the keeping good of the tender in order to discharge it. It is a tender in payment of a debt that must be kept good in order to stop running of interest, etc. The funds of this alleged tender apparently have been so disposed that there is no remedy for the plaintiff, and the defendant seems to have escaped all liability to the plaintiff, if the tender was perfect in form. Her property is not liable, because of its technical discharge of the plaintiff's lien, and the defendant is not liable, because she never agreed to pay the mortgage.

[3, 4] In view of the serious consequences resultant upon a valid tender and its refusal, the proof should be very clear that it was fairly made and deliberately and intentionally refused by the plaintiff, and that sufficient opportunity was afforded to ascertain the amount due. Tuthhill v. Morris, 81 N. Y. 99. The plaintiff was not required to immediately accept or refuse the tender, for he must have been allowed a reasonable time in which to examine the papers, and calculate and ascertain the amount, and consider whether he would be satisfied with the sum tendered. 27 Cyc. 1407.

While the defendant testifies that plaintiff said "No," in response to defendant's inquiry, as she exhibited the money to him, saying, "Do you want this?" yet the fact must be found that the plaintiff, if he did say "No," as claimed by the defendant, did not walk away, but immediately said, "I want to consult my attorney before I can decide;" "when I consult my attorney I can decide;" "I will step to the phone and call my attorney;" that as defendant was leaving the plaintiff, the plaintiff said to the defendant, "Wait a moment, I want to call my brother," the defendant immediately hurrying away. It being a fact that plaintiff asked defendant to wait a moment until he could call his brother, who was in an adjoining room, and suggested consulting his attorney, it is certain that he had not deliberately and intentionally refused to accept the money offered. The burden being on the defendant of establishing a deliberate and intentional refusal, the finding must be that such fact has not been established. The request for an opportunity to call the attorney on the telephone, and the request to wait a moment until the brother could be called, was not unreasonable. Defendant's

claim that by reason of her assertion that plaintiff said "No," or that plaintiff unreasonably delayed his acceptance or refusal of the tender, her real estate has been discharged from the lien of the mortgage, and that plaintiff has lost his $1,000, cannot be maintained.

The finding must be that the defendant did not tender to the plaintiff on February 16, 1912, the amount due on the first and second mortgages, which was refused by the plaintiff. Bakeman v. Pooler, 15 Wend. 637; Harris v. Mulock, 9 How. Prac. 402. The moneys deposited by the defendant with the county treasurer of Cattaraugus county to the credit of the plaintiff having passed from the control of the defendant and being the property of the plaintiff, the amount thereof, with accretions of interest, must be paid to the plaintiff by the county treasurer and be by him credited upon the amount due at this time upon the second mortgage.

[5] The third mortgage was for $2,000, dated February 11, 1907, payable to John Ham, and assigned to the plaintiff on December 22, 1908. The amount thereof became payable in five years from its date, with annual interest, upon condition that, should defendant drill two oil wells within two years from its date upon the premises in question, and get a well producing with proper care and pumping one barrel or more per day at the end of three months after the same should be completed, then the mortgage to be in full force and virtue; but in case defendant should complete two wells, and not get a well producing one barrel or more per day with proper care and pumping, then the mortgage was to be void. The defendant completed two oil wells, one known as No. 4, on April 16, 1907, and one known as No. 5, on June 22, 1907. The answer of the defendant contains an allegation denying that either of these oil wells produced one barrel per day at the end of three months from the time of their completion. This third mortgage was void if neither of these two oil wells produced at least one barrel per day at the end of three months from April 16, 1907, and June 22, 1907, respectively. On February 11, 1908, the defendant paid the annual interest of $120 on this mortgage. The defendant paid such annual interest on its maturity in 1909, 1910, and 1911. The plaintiff testifies that just before he purchased the mortgage from the mortgagee, John Ham, in December, 1908, the defendant stated to him that the wells were producing the required amount of oil to comply with the condition in the mortgage. A real estate agent who negotiated the sale of the property by John Ham to the defendant testified that the defendant told him that John Ham should pay him his commission on the additional $2,000, as the oil wells had produced more than the required amount, more than one barrel per day. The testimony of the men who pumped the wells in July and August, 1907, establishes that No. 4 well then produced at least one barrel per day.

The contention of the defendant that she paid the interest on this mortgage February 11, 1908, and February 11, 1909, for fear that if such interest was not paid plaintiff would begin foreclosure of the first and second mortgages is without merit. The fact is that the first mortgage had been extended, and the moneys thereby secured did not become payable until February 11, 1910, and there could have been no foreclosure thereof. The fact is that the second mortgage did not ma-

ture until February 11, 1910. The fact that defendant paid the interest on this third mortgage for four years goes a long way to satisfy the mind that the defendant knew in July and August, 1907, what the daily production of each of these wells was. The defendant visited the premises in July and August, 1907, and talked with the pumper as to the amount of the daily production. She had full, complete, and practical opportunity to know exactly how much oil either of these wells produced at the end of three months from their respective dates of completion.

The finding must be that the third mortgage is a valid and subsisting lien upon the premises for the sum of $2,000 and interest from February 11, 1911.

Judgment of foreclosure of the three mortgages, with costs, is awarded. Let findings be prepared.