[L. A. No. 14661. In Bank.—December 20, 1934.]

IDA SONDEL, Appellant, v. J. K. ARNOLD, Respondent.

Henry L. Knoop and David A. Sondel for Appellant.

Lazare F. Bernhard for Respondent.

WASTE, C. J.—This is an appeal by the plaintiff from a judgment quieting the title of the defendant and cross-complainant to certain real property situate in the county of Los Angeles. The cause now comes before us both on the merits and upon motion of the respondent to dismiss or affirm for an asserted lack of merit in the appeal.

The action is one in equity commenced by appellant to have it decreed that the lien of the trust deed under which respondent derived title had been discharged prior to the purported sale thereunder and that all proceedings leading up to such sale and the trustee's deed thereafter executed to respondent were void and of no effect. It was also prayed that respondent be perpetually enjoined from asserting any claim to the property.

Respondent answered and cross-complained requesting that his title to the property be quieted. At the conclusion of the trial, the court below found in substance that the lien of the trust deed had not been discharged prior to the trustee's sale and that said sale and the deed subsequently executed were valid and effective. It thereupon quieted respondent's title. Other findings essential to the disposition of the cause will be mentioned hereinafter.

It appears that on November 21, 1929, the then owners of the property in dispute borrowed $6,500 from the Pulliam Mortgage Company for which they gave their promissory note, due November 21, 1932, and as security therefor executed a deed of trust on the property. The office of the Pulliam Mortgage Company in Los Angeles was designated in the note as the place of payment thereof. Prior to the maturity date the Pulliam Mortgage Company sold and assigned the note and deed of trust to the respondent. On February 24, 1930, the appellant purchased the property

"subject to the deed of trust" but did not at any time assume or agree to pay the note.

Several months prior to the maturity of the note the appellant sought an extension of time upon the terms of which the parties were unable to agree. Thereafter and on November 9, 1932, twelve days prior to the due date of the note, respondent addressed the following letter to the appellant which the latter admittedly received: "Please note that the loan on your property . . . will be due November 21, 1932, amount $6,500.00 and interest $113.75. I will have your papers on that date at the Bank of America, South Spring Street and Seventh, at Window No. 16, at 11 a. m. I will change that time .if you call me at Wyoming 9635 before that date. . . . " No response of any character was made to this letter by appellant.

Neither the principal nor the interest mentioned in the letter was ever paid by appellant, or the makers of the note, whereupon, respondent proceeded to and did procure a trustee's deed to the property following sale for alleged default. This action was then commenced by appellant to have the trustee's sale and resultant deed declared void on the ground that she had on the maturity date of the note made a valid tender of the amount due, causing, under the provisions of section 1504 of the Civil Code, so she asserts, a cessation of interest and a discharge of the lien against the property. The cited code section provides that "An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof." It has been held under this section that a tender, duly made, of the amount of an obligation works a discharge of a lien given as collateral security therefor. (*Leet* v. *Armbruster*, 143 Cal. 663, 668–672 [77 Pac. 653]; *Walker* v. *Houston*, 215 Cal. 742, 745–747 [12 Pac. (2d) 952, 87 A. L. R. 937].)

In support of his motion to dismiss, respondent urges that appellant, being a mere purchaser of the property subject to the lien, is not a party to the note or indebtedness secured, but rather a stranger thereto, and cannot therefore by a mere tender discharge the lien and free the property therefrom but must actually pay the amount due. He cites

three authorities from sister states which tend to support his theory. While we are inclined to the view that the above-mentioned California cases announce a rule at variance with that set down in the cases from other jurisdictions relied on by respondent, we find it unnecessary to now declare that a purchaser of property subject to a lien, though not a party to the contract creating the indebtedness for which the property is security, and not personally liable for such indebtedness, may by a tender free the property from such lien. Assuming the latter to be the rule in this state, our examination of the record satisfies us that appellant did not make a tender sufficient to bring the rule into action in the present case. A tender to be effective for the purpose contended by appellant, under the terms of the very section relied on by her (1504, Civ. Code), must be "duly made" and, as further provided in section 1493 of the Civil Code, "An offer of performance must be made in *good faith,* and in such manner as is most likely, under the circumstances, to benefit the creditor."

In this regard the evidence tends to show, as indicated above, that twelve days prior to the maturity date of the note the respondent informed appellant by letter, which the latter admitted receiving, that he would have the necessary papers on that date at window 16 of the Bank of America, South Spring Street at Seventh, at 11 A. M., and would "change that time if you call me"; that appellant did not at any time make any form of response to this letter, nor did she then or subsequently ever inform respondent of her willingness to pay off the trust deed at the office of the Pulliam Mortgage Company, designated in the note, or at any other place; that the respondent appeared at the time and place mentioned in the letter, with certain of the papers and would have executed others in the event appellant offered payment; that appellant neither personally nor by agent appeared at said time and place, or at any other time or place, with the money essential to pay off and discharge the lien of respondent's trust deed; that on the maturity date of the note the appellant's husband, who acted as her agent in this matter, telephoned to the office of the Pulliam Mortgage Company and inquired whether the latter was in a position to accept payment on the trust deed and deliver the papers, to which query a

negative response was given. At this point the evidence is in conflict, the appellant's husband testifying that he informed Mr. Pulliam that he "was then leaving my office, on the way to his office, to take care of the . . . note and he should have the note, trust deed, fire insurance policy, and request for reconveyance ready for us with somebody in the office, so that upon my arrival the matter could be taken care of" but that Pulliam told him that respondent "had at no time left the papers with him". Pulliam, on the other hand, testified that appellant's husband "asked me if he came up there to pay the loan would we be authorized to accept payment and could we deliver the papers to him. . . . The conversation was in the form of a questionnaire, as far as Mr. Sondel's statements were concerned. . : . He did not at any time say he wanted to pay his loan. He merely asked questions."

The trial court found that "at no time, either before, at, or after the maturity of the promissory note herein referred to, did the plaintiff and cross-defendant, or anybody whomsoever, at the place specified for payment, or at any other place, or at all, make an offer to perform, or offer to perform, under the promissory note herein referred to, or to pay the same, or any part thereof, as alleged in plaintiff's complaint herein, or otherwise, or at all, nor did the plaintiff and cross-defendant, or any person whomsoever, make any tender, nor did said plaintiff and cross-defendant tender to the defendant and cross-complainant J. K. Arnold, or to any other person for the account of the defendant and cross-complainant Arnold, or otherwise, or at all, the sums due under the provisions of said note, or any part thereof.

*"It is true that had said Arnold been present at the office of said Pulliam Mortgage Company on November 21st, 1932, with the note, trust deed, insurance policies and an executed request for reconveyance of the property secured by the trust deed, and had plaintiff's husband upon examination of said papers found them all to be in proper form, he would have paid the amount of said debt to said Arnold upon delivery to him of said papers,* but, at the same time, on the 21st day of November, 1932 plaintiff knew that J. K. Arnold had requested payment of the note at Bank of America, Seventh and Spring Streets, and intended to be there to accept payment; that plaintiff did not believe that J. K. Arnold would

be at the office of Pulliam Mortgage Company to receive such payment or that any papers relating to the loan would be there, or that the Pulliam Mortgage Company would be authorized to accept payment. That plaintiff believed that said Arnold would be at the Bank of America to receive payment of the note and that if payment was tendered to said Arnold it would be received and all papers to which plaintiff was entitled on payment would be executed and delivered to her.

"That in communicating with Pulliam Mortgage Company respecting the payment of the note, plaintiff was avoiding rather than seeking a meeting with said Arnold.
. . .

"Also in connection with paragraph VI, it is true that neither the plaintiff nor anyone else appeared at the office of the Pulliam Mortgage Company, or at the home of the defendant and cross-complainant J. K. Arnold, or at the Bank of America, Seventh and Spring Street Branch, or at any place on said day of maturity, or at any time, for the purpose of paying off said note, or tendering the amount due under said note and deed of trust, or any part thereof.
. . .

"That the defendant and cross-complainant J. K. Arnold, was ready on the day of maturity of the said note and at all times, to execute a request for reconveyance to the said plaintiff herein upon being tendered the payment of the within obligation."

The finding of fact that appellant had not at any time or place made a tender or offer of performance is warranted under the evidence and fatal to her contention herein. We fail to perceive wherein appellant may derive much comfort from the italicized portion of the above findings. That portion is not the equivalent of a finding of sufficient tender, as appellant apparently concludes. Reasonably construed as a whole the findings are susceptible of but one interpretation, viz., that appellant did not in good faith make a tender of performance. In view of the conflict in the testimony and the admission of appellant's husband while on the stand that neither appellant nor any person representing her had appeared at the office of the Pulliam Mortgage Company, designated in the note, or at the Bank of America, designated in respondent's letter, or at any other place,

with the money necessary to pay off and discharge the lien, or had ever contacted respondent directly or through an authorized agent and actually tendered the amount due, we are satisfied with the trial court's conclusion and unhesitatingly declare that there never had been a tender and refusal, within the meaning of the authorities, so as to work a discharge of the lien. Our reading of the record convinces us that by her conduct appellant, as found by the trial court, was seeking to avoid rather than to make payment. In other words, a tender had not been "duly" and in "good faith" made even though for present purposes we conclude that respondent, as appellant urges, was without authority to attempt to change the place of payment. Respondent's conduct in this regard, whether proper or improper, did not relieve appellant from making a reasonable effort to pay off the lien. This she did not do. On the contrary, the evidence discloses that her efforts throughout have been evasive and her purpose insincere. In other words, there have not been a definite tender and an unwarranted refusal, essential to work a discharge of the lien. (*Smith* v. *Mould*, 87 Misc. 199 [149 N. Y. Supp. 552, 555]; *Hilmes* v. *Moon*, 168 Wash. 222 [11 Pac. (2d) 253, 260, 93 A. L. R. 1].) Under the circumstances, the trial court's disposition of the cause is fair and proper.

For the foregoing reasons the motion is denied and the judgment is affirmed.

Curtis, J., Preston, J., Langdon, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.