CIRCUIT COURT FOR MULTNOMAH COUNTY, NOVEMBER TERM, 1869.

## L. BESSER *v.* J. C. HAWTHORN *et al.*

FORECLOSURE OF MORTGAGE, EFFECT OF.—Where S. conveyed land to A. and took back a mortgage for the purchase money which was duly recorded, and A. mortgaged the same land to B., and the latter mortgage was also duly recorded. And afterwards S. foreclosed his mortgage without making B. a party to the suit of foreclosure, and S. purchased the premises under the decree of foreclosure, and regularly obtained his sheriff's deed under the decree, and then sold and conveyed to H. The title of H. is subject to the mortgage executed by A. to B.

PARTIES ON FORECLOSURE.—When the statute is silent as to the necessity of making a junior mortgagee a party, the rule applies, that all incumbrancers, as well as the mortgagor, should be made parties, if not as indispensable, at least as proper parties to the suit, whether they are prior or subsequent incumbrancers.

IDEM.—If any incumbrancers, whether prior or subsequent, are not made parties, the decree of foreclosure does not bind them.

LEGAL TITLE OF MORTGAGOR.—Equity of redemption defined. Our system has so changed the law, that the mortgagor retains the right of possession and the legal title.

REDEMPTION.—The equity of redemption cannot be cut off, unless by the intervention of a court or by an actual conveyance by the mortgagor.

IDEM.—It cannot be divested by a suit to which the mortgagee is a stranger.

IDEM.—The statute defining the mode of redemption does not create the equity of redemption. It only defines the modes in which that right is to be exercised.

JUNIOR MORTGAGEE.—A junior mortgagee is not so far bound by a decree rendered without notice to him, as to be compelled to apply by bill for leave to redeem. But he may resort to the ordinary mode of foreclosure as if no sale had been made.

ACCOUNT.—If the rule formerly bound the party not served, to abide "*by the account,*" unless he could show fraud or collusion, it does not follow that his *right to redeem* was cut off.

10

MERGER.—When the holder of the senior mortgage, purchased the premises under the decree of foreclosure, and acquired the *legal* title, the equity which he previously held, would, by strict rules of law, be deemed merged in the legal title.

IDEM.—But it has long been the practice in courts of equity to hold the legal and equitable title distinct, although both were vested in the same person, when it can be clearly gathered from all the proceedings that such was the intention of the holder when he acquired the legal title. And whenever the nature of the case shows that such severance of the legal and equitable title is evidently to the interest of the holder, such intention will be presumed.

PRIORITY.—On a foreclosure of a junior mortgage, the proceeds will be applied; first, to satisfy the prior mortgage; second, the junior mortgage; and the residue to the holder of the legal title.

INTEREST.—A note, made before the passage of the statute prescribing rates of interest, which calls for three per cent. per month, will be enforced according to the terms of the note.

THIS is a suit to foreclose a mortgage, executed on the twentieth of June, 1859, by Cincinnatus Shultz and his wife, to the plaintiff, to secure the payment of $500, two years from its date, with interest, at three per cent. per month.

On the seventh day of the same month, said Cincinnatus Shultz had purchased the lands thus mortgaged, from James B. Stephens, and had given his note, payable in ninety days, for $400 of the purchase money and interest. Said Shultz and his wife then executing a mortgage on the same lands, to James B. Stephens, to secure the $400 and interest, which mortgage was recorded on the twentieth of June, 1859.

The mortgage from Shultz and wife, to the plaintiff, was duly recorded on the twenty-first of June, 1859.

In October, 1859, Stephens commenced suit of foreclosure, to recover the $400 and interest, making said *Cincinnatus Shultz and Mary, his wife*, defendants, and omitting the subsequent mortgagee, *L. Besser*, and on the twenty-third of November, 1859, obtained a decree of sale, to satisfy principal and interest, then amounting to $424.60. On the thirty-first of December, said Stephens purchased the block under said decree, for $620, and received a sheriff's deed on June 22, 1860, duly approved by the court, and caused the same to be recorded.

On the twentieth of December, 1860, said Stephens and

his wife, conveyed the premises to Mary White, and her deed was recorded September 25, 1865. On the thirtieth of October, 1866, said Mary White and her husband, W. L. White, conveyed the premises to the defendant, James C. Hawthorn.

On the thirtieth of January, 1867, the plaintiff filed his bill in this suit, against said Shultz and wife, and said J. C. Hawthorn, to foreclose the junior mortgage.

The cause was submitted on the pleadings and written evidence.

*Mitchell, Dolph* and *Smith,* for the plaintiff.

*J. H. Reed,* for the defendant.

UPTON, J. The controverted questions in this case, arise from the failure to make Besser, the junior mortgagee, a defendant in the original foreclosure suit, instituted by Stephens.

The statute in force prior to 1862 was silent as to the necessity of making a junior mortgagee party upon foreclosure, and the general rule, as stated in Story on equity pleadings, § 193, "That all incumbrancers, as well as the mortgagor, should be made parties, if not as indispensable, at least as proper parties to such a bill, whether they are prior or subsequent incumbrancers," was then undoubtedly applicable.

But counsel in the argument of this case differ radically from each other in defining the position and rights of one who is "not an indispensable party," and as to the effect of omitting to make such an one a defendant. The plaintiff claims that, if omitted, he is in no case, and in no way, bound by the decree. But the defendant urges that he is bound by the decree, and can only attack the proceedings on the grounds of fraud or collusion; and he refers to a note appended to § 193 Story's Eq. Pl., and numerous English cases there cited, to the effect:

1st. "That mortgagees have been allowed to foreclose in the absence of subsequent incumbrancers."

2d. "That the decree is not conclusive upon subsequent

mortgagees who are absent, and that upon *proof of collusion* they have been allowed to *open the account.*"

From these and other authorities introduced by the defendant, he argues that *nothing else* would be left to the junior mortgagee who is not served, but the privilege of opening the account on proof of *fraud* or *collusion.* And that in every other respect his position would be the same as if he were served: that his right to redeem would cease sixty days after a confirmation of sale, or under the act of 1854, three months after the day of sale.

The authorities cited in the note are not accessible to us, and the inference sought to be drawn does not necessarily arise from the language of the note.

It may be a sound rule, that the junior mortgagee, not served, should be bound by the *account,* unless he can show *fraud or collusion,* and yet it may not follow that his right *to redeem* is forever cut off by a proceeding in which he was not a party, and of which he had neither actual nor constructive notice.

The construction thus placed upon the language of the note is also in direct opposition to the text with which it is cited. For the learned author says in the same section: "If, indeed, any incumbrancers (whether prior or subsequent) are not made parties, the decree of foreclosure does not bind them, as also a decree of sale would not."

Formerly, on the execution of a mortgage, the legal title and the right of possession passed to the mortgagee.

The mortgagor retained an interest in the premises, but it was simply a right to redeem—a right lying dormant in him for the present, but which by payment and discharge of the debt, would ripen into a power in him, to demand and have the legal title by a reconveyance. From the meagreness of this interest, and for the want of a more appropriate designation, the estate or right remaining in the mortgagor was called "the equity of redemption." The name indicates in a marked manner the nature of the right or property remaining in him. Yet, intangible as was his right or interest, it was capable of subdivision by the execution of one or more junior mortgages. In which case, the original

mortgagor, who had already divested himself of the legal title by conveying an estate in fee to the first mortgagee, could, by the execution of a subsequent mortgage, convey that which was theoretically treated in some respects as a legal title, and which, by the action of the subsequent or junior mortgagee, might be converted into a legal title. For it gave to the latter the right to redeem from the prior mortgagee, and to entitle himself to have the possession and to hold the legal title subject to the original equity of redemption.

Our system has so changed this class of contracts, that the mortgagor retains the right of possession and the legal title. But we still call the interest remaining in him "The equity of redemption." We still respect the aphorism "Once a mortgage always a mortgage," and under the law, the equity of redemption can not be barred, brought to an end, or cut off, unless by the intervention of a court, or by an actual reconveyance by the mortgagee. Before any foreclosure takes place, the junior mortgagee occupies an intermediate position in point of priority, or of superiority of right, between his mortgagor and the mortgagee under the senior mortgage. For the junior mortgagee, by taking the mortgage, voluntarily accepted a security which is subordinate to the rights of the latter, and the original mortgagor, by giving the mortgage, has consented that all the interest which remained to him, after he executed the first mortgage, should be subjected to the rights of the junior mortgagor.

Virtually the mortgagor has made a conditional assignment to the junior mortgagee of all his interest in the premises, intended to be valid and binding on him until he redeems and cancels the junior mortgage. This includes, among other rights with which it clothes the junior mortgagee, that of redeeming from the prior mortgage, and of *substituting himself* in the place of the prior mortgagor as the party having the right to redeem.

How far, then, is the prior mortgagee bound by this transfer, made subsequent to his mortgage? Every system of jurisprudence recognizes in the mortgagor the power to make a valid and effectual assignment and disposition of *all*

*his interest* in the mortgaged premises. His assignee has the right to redeem, and must be made a party to the suit in order to foreclose, and the rule goes so far as to declare it unnecessary to make the mortgagor a party after he has absolutely transferred all his interest to another.

The mortgagor's interest being assignable, as a whole, it would seem to follow that any lawful assignment of a part of his interest, would clothe the assignee with similar rights *pro tanto.* If the mortgagor should assign one of several parcels mortgaged, or an undivided part of the whole, I think it cannot be argued, either upon authority, or the reason of the matter, that the assignee could be barred of his right to redeem, without making him a defendant.

He stands as a substitute for the mortgagor, having such an interest as the whole world, including the mortgagee, is bound by if chargable with notice.

While such assignee of the legal title, is a substitute for the assignor, the junior mortgagee is not absolutely substituted, but he is conditionally substituted, and placed in the intermediate position above suggested, of which position, by force of the recording act, the whole world is bound to take notice.

The same principles and reasons that will reach the case of an assignee of the whole of the mortgagor's interest, and entitle him to a standing in court, will also reach the junior mortgagee.

This right cannot be denied to him, on any supposable ground, except that the prior mortgagee acquired such rights and power over the premises, that the mortgagor could not make a subsequent mortgage.

If the mortgagor can, without the mortgagee's consent, make a junior mortgage, having the force and effect to make the junior mortgagee a redemptioner, and which, upon being recorded, has the effect to notify the whole world of a right of redemption existing in the junior mortgagee, it follows that he cannot be divested of this right in a suit, to which he is not a party.

The argument of defendant, that the statute, in regard to the time and mode of redeeming after sale upon execution,

has abolished all existing rules as to the rights of redemption, although plausible, is without foundation. The right to redeem is an incident of the original mortgage. It existed in the mortgagor as soon as the first mortgage was executed, subject only to the maturing of the note. It so existed, liable to pass by assignment to his grantee. And it existed in his grantee as an equitable right, from the time of the grant to him, whether the assignment is made by an absolute deed or by a mortgage. The statute, instead of creating a right to redeem, only relates to the mode in which the right may be annihilated. The statute does away with the idea of a strict foreclosure, and substitutes the process of sale; and it expands the lifetime of the equity of redemption to a certain time after the sale, or after its confirmation. The right to redeem cannot be said to be in any sense the creature of the statute, and there is no reason, based upon such an idea, for construing the statute strictly as against that right. To argue that the statutory provisions settle this question, is to beg the question; for the construction of the statutory provisions which declare who may redeem, so far as they relate to a party not served with process, depends entirely on the original question with which the argument commenced; that is, whether one who was not served is barred of his equity of redemption by a sale.

The next question, I think one of more difficulty; that is, whether the junior mortgagor, not having been served, should be so far bound by the decree as to be compelled to apply by bill for leave to redeem from the prior mortgage, or whether he may proceed in the ordinary mode to foreclose his mortgage.

In favor of the former position, the defendant cites the case of *Bank of United States* v. *Corroll et al.*, 4 B. Monroe, 40. That case differs from the one before us in the very important particular, that the subsequent mortgage, or rather trust deed, was a secret conveyance, of which the prior incumbrancer had no notice until after the foreclosure and sale to him under the prior trust deed. I think it would not be contended, that, if in this case the prior mort-

gagee had had no notice of plaintiff's mortgage until after his purchase under the decree of foreclosure, the defendant's title would be subject to the plaintiff's claim. Under that view the case last cited is not in point.

The next case cited is that of *Wood* v. *Oakly*, 11 Paige, 400. The case rests upon the construction of certain statutes providing for notice in the nature of *lis pendens* and their effect, and affords very little aid in determining what is a correct rule in the absence of statutory directions.

The conclusions drawn from *Lowd* v. *Carpenter*, 2 P. Will. 482, that *lis pendens* is tantamount to actual notice, are applicable only to deeds and incumbrances executed pending the litigation.

In *Hains et al.* v. *Beach et al.*, 2d John. Ch. 459, it is laid down, as well settled, that "to a bill for foreclosure and sale of mortgaged premises, all incumbrances or persons having an interest *existing at the commencement* of the suit, subsequent as well as prior in date to the plaintiff's mortgage must be made parties, or otherwise they will not be bound by the decree."

It may safely be said that, except when changed by statute, this has been the rule from that day to the present. Nor is the essence of the rule changed by the code (sec. 411). "Persons having a prior lien" may be omitted; but in that case they are not bound by the decree. (3 John. Ch. 459; 6 Ib. 450.)

If, then, it be true that mortgagees, not made parties, are not bound by the decree so far as to be barred of their right to redeem, is there any established rule that places them on a different footing from a subsequent purchaser of the legal title, or circumscribes their rights, because of the foreclosure to which they are not made parties?

In *Vanderkemp et al.* v. *Shelton*, 11 Paige, 28, the question whether such junior mortgagee is driven to his bill to redeem was directly presented and was very fully examined, and chancellor Walworth was very clearly of opinion, that the right of the junior mortgagee, not made a party, could not be affected by a sale on foreclosure—that he was not required to file a bill to redeem—but that his proper remedy

was by foreclosure of his mortgage. It is there held that a purchase by the junior mortagagee on foreclosure of his mortgage did not impair the rights of the subsequent mortgagee not served.

In this case, when Stephens, the grantor of the defendant, Hawthorn, purchased under the decree in his favor, he only obtained by the purchase the interest which Shultz and wife then had in the premises. He obtained, it is true, the legal title, but it was the legal title subject to the plaintiff's mortgage.

It was formerly the doctrine that in such a case, his equitable title merged in the legal title upon his purchase, the effect of which would be to give the plaintiff's mortgage priority to the defendant's entire interest; and such would be the rule now if the subject were under consideration in a court of law.

But it has long been the practice in courts of equity to hold the legal and equitable title distinct, although both were vested in the same person, wherever it could be clearly gathered from all the proceedings that such was the intention of the holder when he acquired the legal title. And whenever the nature of the case shows that such severance of the legal and equitable titles is evidently to the interest of the holder, such intention will be presumed. (*Roberts* ads. *Jackson,* 1 Wend. 478; *James* v. *Morey,* 2 Cow. 246, 284, 300, *Gardner* v. *Aster,* 3 John. Ch. 53; *Cooper* v. *Whitney,* 3 Hill, 95.)

If these views are correct, the plaintiff has a lien upon the mortgaged premises for the principal of the note with interest at the rate specified from the date of the note.

A decree must be entered in his favor directing a sale of the premises. And the proceeds must be applied—

*First*—To the payment to defendant, Hawthorn, of the principal and interest on the $400 note given to James B. Stephens;

*Second*—To the payment of principal and interest of the note held by the plaintiff; and,

*Third*—The residue paid to the defendant, Hawthorn.*

---

* This case having been taken to the supreme court on appeal from the whole of the decree, was tried *de novo* on the original evidence, at the term held September, 1869. The supreme court affirmed the decree of the circuit court. No written opinion having been filed in that court, the case does not appear in the published reports of its proceedings.