[No. 4191. Decided July 5, 1902.]

THEODORE WOODHURST, *Appellant,* v. MILES CRAMER *et al., Respondents.*

APPEAL — EXCEPTIONS TO CONCLUSIONS OF LAW.

When the facts as found by the court are not disputed, the only question is whether the judgment is authorized by the facts found, and this question is reviewable upon a general exception to the conclusions of law.

EXECUTION SALES — POSSESSION DURING REDEMPTION PERIOD.

Under Laws 1899, p. 93, §15, a judgment debtor is entitled to the possession of farm lands sold on execution during the period of redemption.

ACTIONS — SHIFTING OF ISSUES BY EQUITABLE DEFENSE — PRESUMPTION AS TO AMENDMENT OF PLEADINGS.

Although an action in its inception may have been one merely for possession of land, yet where the defendants have asked for equitable relief, and the plaintiff on appeal has asked that the issue raised by defendants be determined, the supreme court will consider the pleadings amended so as to bring the matters suggested within the issues.

JUDGMENTS — LIENS — WHAT LAND SUBJECT.

Land conveyed to a grantee is subject to the lien of a judgment against him, although no cash was paid therefor by the grantee, but the purchase price was paid in part by money advanced by his father and mother and the balance paid from funds arising from a mortgage given on the premises, the money advanced by the parents being secured by the execution of a mortgage to them on the same land, and there being no evidence of the land having been taken by the grantee as trustee for his parents or any one else.

MORTGAGES — CONVEYANCE TO MORTGAGEE — MERGER.

Where a conveyance of mortgaged premises was made to the mortgagee in satisfaction of the mortgage debt, who took same in ignorance of a subsequent judgment lien thereon and canceled the mortgage of record, equity will not treat the conveyance as a merger of the mortgage lien in the absolute estate, but will revive such lien as against a purchaser on execution sale.

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge. Reversed.

*Happy & Hindman,* for appellant.

*Harris Baldwin,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by appellant against respondents to obtain possession of certain real estate in Spokane county, which it is alleged is wrongfully withheld from appellant by respondents. A trial was had before the court without a jury, and a judgment entered to the effect that appellant is not entitled to the possession of any of the lands as against respondents William H. Cramer and Rachel Cramer. Other features of the judgment will be hereinafter mentioned. From the judgment the plaintiff in the action has appealed.

Respondents move to dismiss the appeal and for the affirmance of the judgment on the ground that no exception was taken by the appellant to the conclusions of law.

No exceptions were taken to the findings of facts. The only exception disclosed by the record is the following at the conclusion of the judgment, "To all of which the said plaintiff duly excepts." Appellant concedes the facts as found by the court, and no statement of facts is brought up with the record; but he insists that the judgment is not supported by the findings of facts or the pleadings, and that no exceptions to the conclusions of law are necessary. The judgment follows the conclusions of law, specifically states that it is based upon both the findings and conclusions, and is consistent with the conclusions of law. Respondents urge that the only error claimed is based necessarily upon the conclusions of law, and that, without specific exceptions thereto, there is nothing here for review. They cite *Rice v. Stevens,* 9 Wash. 298 (37 Pac. 440); *Irwin v. Olympia Water Works,* 12 Wash. 112 (40 Pac. 637); and *Fisher v. Kirschberg,* 17 Wash. 290 (49 Pac. 488). Some of the language in the opinions of the above cases is susceptible of the construction placed upon it by respondents' counsel. It will be observed, however, that each opinion refers to a failure to except to both findings of facts and conclusions of law. Neither case refers to a failure to except to conclusions of law alone; and while the language in some instances is disjunctively stated, leaving it to be inferred that specific exceptions must be taken to either findings or conclusions, yet the one question of the effect of a failure to except to conclusions of law alone does not seem to have been directly involved in either of the cases. It is further contended that the statute (§ 21, p. 130, Laws 1893) should be construed to the effect that there can be no review of a conclusion of law without a specific exception thereto. It is possible that the prior decisions of this court may have led to some confusion upon this subject. In the later case of *Carstens v. Lei-*

*digh & H. Lumber Co.,* 18 Wash. 450 (51 Pac. 1051, 39
L. R. A. 548, 63 Am. St. Rep. 906), it was found that
no proper exceptions had been taken to either the find-
ings of facts or conclusions of law; and this court held
that the only question left for determination was, did the
findings of facts warrant the conclusions of law? The
court then proceeded to review that question. The same
course had been previously pursued in *Hannegan v. Roth,*
12 Wash. 65 (40 Pac. 636). There general exceptions
had been interposed to all the findings and conclusions,
without specifying any one in particular. Such excep-
tions were held to be insufficient, and the case then stood
as if there were no exceptions. It was held that the only
question to be determined was whether the conclusions
of law and judgment appealed from were warranted by
the facts found by the court. The court then proceeded to
determine that question. This may be said to be a lib-
eral view of the statute, but it is better to err on the side
of liberality than to adopt a rule that is harsh toward
litigants. When the facts as found by the court are not
disputed, the only question is whether the judgment is
authorized by the facts as found; and under § 5051, Bal.
Code, it is not necessary to except to the judgment itself.
The motion to dismiss is denied.

The court found the following as facts in the case:
That on February 26, 1900, Garr-Scott Company ob-
tained a judgment in said court against respondents Miles
Cramer and wife for the sum of $3,075; that the respond-
ents William H. and Rachel Cramer are husband and
wife, and respondents Miles and Blanche Cramer are also
husband and wife; that said Miles Cramer is a son of
William H. and Rachel Cramer; that on the date of said
judgment Miles Cramer and wife were owners, as tenants
in common with William and Rachel Cramer, of an un-

divided one-half interest, and not more, in blocks 21 and 28 in Reservoir Addition to the city of Cheney, and at the same time the said William and Rachel Cramer, as husband and wife, were the owners of the other undivided half interest in said blocks; that on April 1, 1899, one Wilson and wife, and also one Nevin, respectively conveyed to Miles Cramer certain described tracts of land; that the total purchase price of all said land was the sum of $3,500, none of which was ever paid to the grantors by Miles Cramer and wife, but all of which was paid by William and Rachel Cramer; that, for the purpose of supplying the means to pay said purchase money, said William and Rachel Cramer borrowed from the Pennsylvania Mortgage & Investment Company the sum of $2,500, and also advanced $1,000 from their own money, and thereupon paid said total sum of $3,500 to said grantors; that, for the purpose of securing said indebtedness of $2,500 to said mortgage company, the said William and Rachel Cramer caused the said Miles Cramer and wife on the date of the aforesaid conveyances to execute to said mortgage company five certain promissory notes for the aggregate sum of $2,500, due on or before April 1, 1903, with interest at seven per cent. per annum from date until paid, and did also cause them to execute to said company a mortgage upon all the lands so purchased, for the purpose of securing said promissory notes; that for the purpose of securing to said William and Rachel Cramer the said sum of $1,000 advanced by them, and for the further purpose of securing to them the payment of $1,200, other money due and owing to them from said Miles Cramer and wife, said William and Rachel Cramer caused said Miles Cramer and wife to execute and deliver to said Rachel Cramer a certain promissory note for the sum of $2,200, payable on demand, and bearing interest at eight

per cent. per annum, and did also cause them to execute to Rachel Cramer a mortgage upon the lands so purchased as aforesaid to secure the last mentioned note; that on the 16th day of April, 1900, the said $2,200 note being due and wholly unpaid, the said Miles Cramer and wife, for the purpose of paying the same, conveyed to Rachel Cramer all of said lands, and also their interest in the aforesaid blocks in the city of Cheney, and the said Rachel Cramer, with the consent of William Cramer, accepted such conveyance as payment of said indebtedness, and thereupon released of record the aforesaid mortgage given to secure the same; that said Rachel and William Cramer, as a part of the purchase price of said land, assumed to pay the said promissory notes given to the mortgage company aforesaid, and that they have paid all of said indebtedness except the sum of $800; that, at the time Rachel Cramer received said deed, both she and her husband were wholly ignorant of the existence of the said Garr-Scott judgment against Miles Cramer and wife, and that neither of them had knowledge thereof prior to September, 1900; that, if either of them had known of the existence of the judgment, the said Rachel Cramer would not have received said conveyance as aforesaid, said William Cramer would not have consented thereto, and neither of them would have caused said release of mortgage to be made or consented thereto; that it was not the intention of either of them to lose the lien of their said mortgage upon said lands; that on the 17th day of September, 1900, an execution issued under said Garr-Scott judgment against Miles Cramer and wife to satisfy a deficiency still unpaid thereon, and all of said lands, blocks, and parcels of ground were levied upon, and thereafter, on the 24th day of November, 1900, were sold to said Garr-Scott Company for the sum of $1,600, and a sher-

iff's certificate was regularly issued to said purchaser, the amount of the purchase price credited upon the judgment and the sale duly confirmed; that thereafter the said purchaser sold and transferred said certificate and the land therein described to the appellant, who is now the owner and holder thereof; that appellant bought the same for a valuable consideration, and without notice or knowledge of the facts, except in so far as he could derive notice thereof from an inspection of the records of Spokane county.

From the foregoing facts the court concludes that appellant has no right, title, or interest in any of said lands, except an undivided half interest in blocks 21 and 22 in Reservoir Addition to the city of Cheney, and that he is not entitled to the possession thereof to the exclusion of his co-tenants, William and Rachel Cramer. Judgment was entered accordingly. Was the judgment warranted by the foregoing facts?

Appellant urges that he is, in any event, entitled to judgment for possession, for the reason that he holds as the successor of the purchaser at a sheriff's sale. The sale was made November 24, 1900. This action was commenced in February, 1901. From the description of the lands, they appear to be farm lands, and as such, under the statute of 1899, the judgment debtor is entitled to possession during the period of redemption. See Laws 1899, § 15, pp. 93, 94. The evidence not being here, we will assume in support of the judgment that proof was before the court that such was the character of the lands. In that event, appellant is not entitled to possession.

The judgment, however, goes further than merely to deny possession to appellant, and adjudges that appellant has no interest in any of the lands, except in the Cheney blocks. We think this was error. Strictly considered,

the only issue tendered by the complaint is that of right to possession; but respondents in their answer set up facts heretofore set out as found by the court, and pray that all proceedings had against the lands by virtue of the execution shall be adjudged void and of no effect, and also that the mortgage from Miles Cramer and wife to Rachel Cramer shall be revived. They also ask, if they have not prayed for proper relief, that the court shall grant such relief as may in equity be proper. While the action in its inception seems to have been simply one for possession, yet respondents have asked for equitable relief; and appellant in his brief earnestly asks the court to determine upon this appeal whether the said mortgage may be revived, in order that another appeal upon that subject may be prevented. In view of this mutual request of the parties, we shall consider the pleadings amended so as to bring the matters suggested within the issues.

The first portion of respondents' prayer for relief must be denied. Miles Cramer and wife, the judgment debtors, were the owners in fee simple of the land when the judgment against them was taken. It is true, the court found that they paid nothing for the land, and that the father and mother paid all that was paid; yet when the conveyances were made the entire consideration was secured by mortgages upon the lands, executed by Miles Cramer and wife as the holders of the fee, and it does not appear from the court's findings that it was intended that said Miles Cramer and wife should not become the owners in fee. There is no finding that the title was taken and held by them in trust for the father and mother, or any one else. That the father and mother treated the lands as those of the son and wife is evidenced by the fact that they required them to include in their mortgage to them $1,200 additional indebtedness, which was in no way connected

with the consideration for the purchase. The judgment therefore became a lien as against the lands of the judgment debtors, and continued to be such notwithstanding their subsequent conveyance. It was a lien when the execution sale was made. The sale seems to have been regularly made, and appellant is the legal holder of the sheriff's certificate. He has, therefore, the interest of an execution purchaser in said lands, awaiting the expiration of the period of redemption. He holds that interest, of course, subject to the unpaid portion of the debt to the mortgage company.

The remaining question is whether the interest of appellant is held subject to the mortgage of Rachel Cramer, notwithstanding the fact that she formally released the mortgage of record. It has been established as the rule in this state that a judgment is a lien upon the real, and not the apparent, interest of the debtor. An execution creditor purchasing at his own sale is not a *bona fide* purchaser. He parts with no consideration and takes no greater interest than his debtor has. See *Hacker v. White,* 22 Wash. 415 (60 Pac. 1114, 79 Am. St. Rep. 945), and the review of cases therein contained. Appellant stands in no different relation to the execution sale. He simply purchased what the execution purchaser obtained at the sale, and stands in his shoes. What was the real interest of the judgment debtors when the sale was made? It is true, they held the lands in fee simple with the mortgage canceled of record, but they had never paid the debt. The mortgagee released the mortgage without knowledge of the existence of the judgment lien. The understood consideration was the transfer of the land unincumbered, save by the prior mortgage. It was not intended that there should be a merger of the mortgage lien into the absolute title, subject to the junior lien of this judgment. If the

transfer was not made free from the judgment lien, as understood by the mortgagee,—that being the only consideration for the cancellation of the debt,—then the debt was not in fact paid. The debt being still in existence, and there having been no intention to release the mortgage until the debt was paid, it follows that, as between the mortgagee and the mortgagors, there was not in fact a release. The mortgagors' land was still subject to the burden of this mortgage at the time of the execution sale, and the purchaser took it subject to that burden as the real interest of the judgment debtors. That the mortgage lien was not, in equity, merged in the absolute estate, under the facts found by the court, is sustained by the great weight of authority. See *Hitchcock v. Nixon,* 16 Wash. 281 (47 Pac. 412) ; *Lowman v. Lowman,* 118 Ill. 582 (9 N. E. 245) ; *Mallory v. Hitchcock,* 29 Conn. 127 ; *Webb v. Meloy,* 32 Wis. 319 ; *Lyon v. McIlvaine,* 24 Iowa, 9 ; *Polk v. Reynolds,* 31 Md. 106 ; *Walker v. Baxter,* 26 Vt. 710 ; *Snyder v. Snyder,* 6 Mich. 470 ; *Besser v. Hawthorn,* 3 Ore. 129 ; *Rumpp v. Gerkens,* 59 Cal. 496.

Under the facts as found by the court, it must be held that the Rachel Cramer mortgage still exists, since it was not intended that there should be a merger that would permit the junior lien of the judgment to attach as superior to the mortgage lien. When it is to the interest of the mortgagee to prevent such merger, and when it is not intended that the mortgage should merge into the absolute title, to the extinction of the mortgagee's lien, equity will not compel such merger. For reasons stated above, the judgment that appellant is not now entitled to the possession is correct; but, under the issues as we are now considering them, the judgment should also declare that the lien of the Rachel Cramer mortgage still exists, and that appellant has the interest of an execution

purchaser in the mortgaged lands sold under the execution, but that such interest is subject to said mortgage.

The cause is remanded, with instructions to modify the judgment and decree in accordance with this opinion.

REAVIS, C. J., and FULLERTON, MOUNT, ANDERS, DUNBAR and WHITE, JJ., concur.