[No. 22166. *En Banc.* December 29, 1930.]

GEORGE W. ANDERSON *et al., Appellants,* v. B. K. STARR *et al., Respondents.*[1]

*Arthur C. Bannon,* for appellants.

*Alex Stewart* and *Robert D. Hamlin,* for respondents.

[1]Reported in 294 Pac. 581.

MAIN, J.—Plaintiffs brought this action to quiet title to certain real property, and in the alternative to foreclose a mortgage thereon. The defendants answered, and by cross-complaint sought to quiet title to the property in themselves. The trial was to the court without a jury, and resulted in findings of fact from which the court concluded that the defendants had the superior title. Judgment was entered dismissing the plaintiffs' action, quieting the title to the property in the defendants, and confirming their right to possession, from which judgment the plaintiffs appeal.

The material facts are not in substantial dispute, and, so far as essential to be stated, are as follows: October 22, 1923, and for some time prior thereto, F. C. Outland and wife were the owners of certain lots or tracts of land in King county, Washington. At this time the Outlands were indebted to the appellants, George W. Anderson and wife, in the sum of $1,200. On the date mentioned, Mr. Outland executed a promissory note for $1,200 and delivered the same to Mr. Anderson, and to secure the same Mr. and Mrs. Outland executed and delivered a warranty deed to Mr. Anderson, which deed was duly recorded. The note by its terms was due eighteen months after date, and it was the understanding of the parties that, if the note should be paid, the Andersons would reconvey the property to the Outlands. A payment of $300 was made on the note, but when it became due the Outlands were apparently unable to pay the balance. In order to effect a settlement, the Outlands gave to Mr. Anderson a quitclaim deed to the property, and Anderson surrendered the note. After the execution and delivery of the note and the warranty deed mentioned, but prior to the time that the note was surrendered and delivered and the quitclaim deed given, and on March 27, 1925, Eretta Rose Starr recovered a judg-

ment against Mr. and Mrs. Outland in the sum of $990, together with attorney's fee and costs. Under this judgment, the property in question was sold, and in due time a sheriff's deed was issued to Mrs. Starr.

The controlling question is whether the giving of the quitclaim deed by the Outlands and the surrendering of the note by Anderson worked a merger of the title and thereby made the sheriff's deed to Mrs. Starr, which was the result of a judgment she obtained against the Outlands, superior to the warranty deed, which was in effect a mortgage to secure the promissory note.

It may be admitted, as between the Outlands and the Andersons, that the giving of the quitclaim deed and the surrendering of the note extinguished the debt and completely merged the title. It does not follow from this, however, that there would be a merger in equity as to the outstanding intervening right of Mr. and Mrs. Starr based upon the judgment which was obtained subsequent to the giving of the warranty deed and prior to the giving of the quitclaim deed and the surrendering of the note. A merger ordinarily occurs when the fee and a charge or mortgage thereon vest in the possession of one person. The doctrine of merger arises from the fact that, when the entire legal and equitable estates are united in one person, there can be no occasion to keep them distinct; but if there is an outstanding intervening title, the foundation of the merger does not exist as a matter of law. Equity does not favor the doctrine of merger, and even though two or more rights or estates are united in one person, equity will keep them distinct where it appears from the intention of the person, either express or implied, that he wishes them to be so kept. Whether there be such a merger depends

upon the intention, actual or implied, of the person in whom the interests are united.

In Wiltsie on Mortgage Foreclosure, including Law of Mortgages (4th ed.), volume I, § 264, it is said:

"The general rule is, that when a greater and lesser estate meet in the same person, without any intermediate estate, the lesser estate is at once merged in the greater. A merger ordinarily occurs when the fee and a charge or mortgage thereon vest in the possession of one person. The doctrine of merger springs from the fact that when the entire equitable and legal estates are united in the same person, there can be no occasion to keep them distinct, for ordinarily it could be of no use to the owner to keep up a charge upon an estate of which he was seized in fee simple; but if there is an outstanding intervening title, the foundation of the merger does not exist as a matter of law.

"Equity does not favor the doctrine of merger; and though two or more rights or estates are united in one person, equity will keep them distinct where it appears from the intention of the person, either express or implied, that he wishes them to be so kept. Consequently, whether the mortgage, on becoming vested in the same person with the equity of redemption, is merged or continues to be a charge, depends upon the intention, actual or presumed, of the person in whom the interests are united; and this person will be presumed to intend that which is most to his advantage. Merger is a question of fact, depending upon intent and is not a question of law to be determined from the circumstances."

In 10 R. C. L., page 666, it is said:

"At law it is declared to be the inflexible rule that a merger always takes place when a greater and a less estate coincide and meet in the same person in one and the same right without any intermediate estate. But the doctrine of legal merger is now practically extinct both in England and in the United States, equitable principles being generally applied by the courts of both countries. Since a court of equity is not bound by the legal rule of merger, it will prevent or permit a

merger of estates according to the intention of the parties, either actually proved or implied from the fact that merger would be against the interest of the party in whom the several estates or interests have united; and it has been held that parol evidence is admissible to establish the facts and circumstances attending a transfer with a view to establishing and giving effect to the intention of the parties in respect to a merger. When the circumstances under which merger ordinarily takes place are shown, the burden rests upon him who alleges that there was no merger to prove a contrary intention, or to prove facts and circumstances from which such an intention will be presumed.''

The doctrine of those texts is supported by the cases of *Dougherty v. Jack,* 5 Watts (Pa. St.) 456, 30 Am. Dec. 335; *Gleason v. Carpenter,* 74 Vt. 399, 52 Atl. 966; *Worcester National Bank v. Cheeney,* 87 Ill. 602; *Bassett v. O'Brien,* 149 Mo. 381, 51 S. W. 107; *Aiken v. Milwaukee & St. Paul R. Co.,* 37 Wis. 469; *Smith v. Roberts,* 91 N. Y. 470; and others that might be cited.

It thus appears that whether there has been a merger in a particular case is a matter of intention, and this may be shown by attendant facts or circumstances. In the present case, even though there was a merger, complete as between the Outlands and the Andersons, it does not follow that there would be a merger as between the Starrs, respondents herein, and the Andersons, the appellants, because, at the time the transaction between the Andersons and the Outlands was settled, there was an outstanding right of the Starrs which had intervened prior to that time. An intervening incumbrance or equity of any kind is generally sufficient to prevent a merger of the mortgage with the equity of redemption, provided the mortgage be not one which the owner has assumed to pay, or one against which he is estopped from defending, whether

such incumbrance be derived from a sale on execution or is any other lien or equity.

In Jones on Mortgages (8th ed.), volume 2, § 1080, at page 513, it is said:

"An intervening incumbrance or equity of any kind is generally sufficient to prevent a merger of the mortgage with the equity of redemption, provided the incumbrance be not one which the owner has assumed to pay, or one against which he is estopped from defending whether such incumbrance be an attachment, a levy of execution, another mortgage, a life interest reserved to the assignor, a vendor's lien, or any other lien or equity."

That rule, in Thompson on Real Property, volume 5, § 4680, on page 843, is stated to the same effect and almost in the identical language used in the last cited text.

This court has recognized and approved the same rule. In *Hitchcock v. Nixon*, 16 Wash. 281, 47 Pac. 412, it is said:

"A great portion of the respondent's brief is taken up in discussing the subject of merger and non-merger, and it is claimed that when Wilkin deeded the land which he had theretofore mortgaged to Nixon, there was no merger, and that Nixon had a right to be protected against the outstanding mortgage of Geddis by his prior mortgage. We do not think that under the almost universal authority, this proposition can be questioned. It was evidently to Nixon's interest that there should not be a merger; and that being true, a court of equity would not compel the merger. . . ."

In *Chase National Bank v. Hastings*, 20 Wash. 433, 55 Pac. 574, it is said:

"We think the rule is quite well settled that, wherever it is more beneficial to the person taking the fee that the mortgage upon it should stand, that circumstance should control in determining the question of intention, and equity will give effect to it by prevent-

ing merger and treating the mortgage as a subsisting charge. But where, as in the present case, the whole title, legal and equitable, unites in the same person and there is no intervening outstanding interest or lien, and it cannot be perceived that the keeping alive of the mortgage will be to the advantage of the grantee or essential to the protection of any right, and where to do so will work a hardship upon third parties, the acceptance of the deed extinguishes the mortgage and a merger is deemed to have taken place. Edmiston, having taken the deed from Austin, held both legal and equitable title and there was no outstanding intervening interest or lien. He could have no interest, consistent with an honest purpose, in thereafter keeping the estates distinct, and it was not necessary to the protection of any right of his that the mortgage should be kept alive. Indeed, under the assumption clause of the deed, his obligation was to discharge it. Under such circumstances, it must be held that the equitable merged in the legal estate, and this merger extinguished the mortgage debt. A different rule exists where it is more beneficial for a party taking the conveyance to keep the legal and equitable estates distinct. He may elect, under such circumstances, to continue the mortgage as a subsisting lien.'' (Citing authorities).

That case was here upon a second appeal, 28 Wash. 150, 68 Pac. 454, and it was there said:

''The material facts found upon the last trial, as above stated, seem to present the question of merger again as decisive of the case. The statement in the syllabus on the former appeal, 'where the whole title, legal and equitable, unites in the same person, and there are no outstanding intervening interests or liens, the acceptance of a deed by the mortgagee, in which he assumes the mortgage debt, effects a merger of the two titles, which could not be defeated by the grantee's thereafter assigning the notes secured before their maturity,' is the law of this case. But from the facts now before the court it is clear there were outstanding intervening interests and liens at the time the deed was executed by Austin on the 30th of September,

1892, to Edmiston, and it is equally clear there was no merger of the legal and equitable title in Edmiston.''

Applying the rule stated to the present case, it was to the interest of the appellants Anderson that there should be no merger, for if there should be they would take their title subordinate to the intervening judgment of the Starrs, which resulted in a deed to the property. There is no finding that the Andersons intended a merger as against the Starrs, and the evidence in the case would not support such a finding. From the excerpts from the authorities cited above, it necessarily follows that there was no merger, and that the Andersons had the right to foreclose their warranty deed, which had the effect of a mortgage as against the Starrs. In the event of an election to foreclose, either or both of the parties will have the right to revamp their pleadings.

The judgment will be reversed and the cause remanded for further proceedings as herein indicated.

MITCHELL, C. J., BEALS, TOLMAN, FULLERTON, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—I cannot yield my concurrence in the foregoing opinion, even though supported by an overwhelming majority. It is obvious that, since the judgment of respondents against the Outlands was entered March 27, 1925, it became an existing lien against the premises; and when the agreement of April 22, 1925, was made between the Outlands and appellants, it necessarily, by force of law, was made subject to the lien of respondents' judgment against the property. The judgment lien thereupon took superiority, for the mortgage lien was extinguished. Of that judgment, appellants had actual as well as constructive notice, long prior to their

cancellation of those indebtedness and mortgage rights.

The many cases and texts cited and quoted by the majority have no influence upon this question, because, as the trial judge said, "all of them lack the element of intent;" and, further, as the trial judge said,

". . . we have a situation here, of knowledge of all the facts, a deliberate, direct, intent to do a certain act, a mistake of law; but not a mistake of fact."

2 Jones on Mortgages (8th ed.), § 1242, states the applicable principles, as follows:

"Mistake must be one of fact.—To entitle one to relief in equity on the ground of mistake, it must be a mistake of fact and not a mistake of law, and the party seeking the relief must have been ignorant of all the material facts and circumstances. . . . For mistakes of law, neither courts of law, nor of equity, give relief. When there is no mistake nor misrepresentation as to the facts, and no fraud, there is no redress."

And further:

"A mortgagee who extinguishes his mortgage lien by purchasing the equity of redemption can not have it restored so as to take precedence of other liens on the ground that he was mistaken as to the legal consequences of his act."

"The only way in which a mortgagee who has purchased the mortgaged property from the mortgagors can preserve his mortgage as a subsisting lien to protect him against intervening liens, encumbrances or claims of dower or the like is to expressly provide in the instrument of purchase that the conveyance shall not operate to let in such intervening claims." Ib. § 1109.

"A mortgage after payment becomes *functus officio* and neither the mortgagee nor any one else has any power to transfer it as a subsisting security or to revive it to secure the same or any other liability." Ib. § 1204.

"If the mortgagee accepts a conveyance of the mortgaged land from the mortgagor as payment of the mortgage debt, the mortgage is extinguished and is no longer a lien upon the land. The fact that the conveyance proves to be valueless does not affect its operation. The conveyance operating as payment of the mortgage debt, the subsequent judgment becomes a prior lien." Ib. § 1109.

It has been held:

"If a party acquires an estate upon which he has an incumbrance, the incumbrance is, in equity, considered as subsisting, or extinguished, according to his intentions expressed or implied. The intention is the controlling consideration, . . .

"A court of equity will not interfere to relieve a party from the effects of an injudicious bargain. . . . He acted upon a misapprehension of his legal rights, and not upon a mistake of facts." *Campbell v. Carter*, 14 Ill. 285.

That case also contains a very exhaustive and interesting review of the cases and texts upon that question. See, also, to the same effect, *Jarvis v. Frink*, 114 Ill. 395. In that case it was also said that the question of merger of legal and equitable estates, as of a mortgage with the fee, depends upon the intention of the mortgagee.

There is not the least difficulty here as to the intention of the mortgagee, for he, with full knowledge of all the facts, said that the deed and the note evidencing his indebtedness were canceled and relinquished. The deed appellants held was a mortgage. A mortgage is not a conveyance. Rem. Comp. Stat., § 804. Although in form a deed, it conveyed no title. *Snyder v. Parker*, 19 Wash. 276, 53 Pac. 59, 67 Am. St. 726; *Clambey v. Copland*, 52 Wash. 580, 100 Pac. 1031; *Womach v. Harding*, 132 Wash. 184, 231 Pac. 949. The only question is one of intention, and it was conclusively shown that appellants intended to discharge

their mortgage. Their note, mortgage and debt were canceled.

The same disposition also precludes appellants from reinstating the mortgage and foreclosing it. If canceled with intent, it is extinguished; there is nothing to foreclose.

Upon the facts shown in this case, the findings and conclusions of the trial court were correct, and the decree should be affirmed.

PARKER, J., concurs with HOLCOMB, J.