[No. 28004. Department Two. September 24, 1940.]

ARCH GILL, *Respondent*, v. JAMES STROUF *et al.*, *Appellants.*[1]

[1]Reported in 105 P. (2d) 829.

*T. B. Southard* and *Clinton & Southard,* for appellants.

*William M. Clapp,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover the unpaid balance due upon a promissory note and to foreclose a mortgage given as security therefor. Defendants Strouf answered and cross-complained, alleging payment of the note held by plaintiff and seeking, in turn, recovery upon certain notes held by them, as well as foreclosure of two mortgages given as security for the latter notes. All the mortgages here involved concern the same realty.

Trial to the court resulted in judgment for plaintiff in an amount found to be due upon the note held by him, together with an attorney's fee, and for defendants Strouf in an amount found to be due upon one

of the notes held by them, together also with an attorney's fee. Foreclosure of plaintiff's mortgage and of one of the mortgages held by defendants Strouf was granted, the lien of plaintiff's mortgage, however, being decreed to be prior and superior to any right, title, claim, or interest of any of the defendants. From that decree, defendants Strouf alone have appealed.

The facts in this case, when clearly understood, lend themselves to ready disposition by the application of well accepted principles of law. We shall state the facts in their chronological order.

On January 2, 1918, appellants, then owners of the realty here involved, executed to one C. T. Tupper their promissory note for one thousand dollars, payable in five years from date thereof, with interest at the rate of six per cent per annum, as evidenced by coupons thereto attached, and containing the further provision that, if any of the principal or interest were not paid at maturity, such unpaid amounts should bear interest at the rate of ten per cent from the time they respectively became due. To secure the note, appellants executed to Tupper a mortgage upon the land. The note and mortgage were subsequently acquired by respondent, as will appear at a more appropriate point in the chronology of the facts.

On January 2, 1921, appellants conveyed the land to defendants Curry. As consideration for the conveyance, the Currys assumed the prior mortgage, and in addition executed and delivered to appellant James Strouf three promissory notes, each in the sum of one thousand dollars, likewise secured by a mortgage on the premises.

On December 7, 1927, the Currys, who were in need of a loan, executed a promissory note for $1,760 in favor of defendant Wilson Creek State Bank, secured by a third mortgage on the land. That note was also

signed by appellant James Strouf, but as an accommodation maker only. In addition, the three one thousand dollar notes and the mortgage held by Strouf were pledged by him with the bank as further security for the Curry loan.

In December, 1936, respondent Arch Gill became interested in the possible purchase of the land here in question. Negotiations between him and the Currys developed to the point of a tentative understanding, according to which respondent proposed to purchase the one thousand dollar note and the first mortgage given to Tupper, then to settle with the other mortgage holders, and finally to pay the Currys five hundred dollars for their interest in the land, including the equipment thereon. That arrangement, however, was never consummated.

Shortly thereafter, and no doubt with the view of effectuating the tentative agreement with the Currys, respondent, on January 5, 1937, purchased the Tupper note and took an assignment of the first mortgage. Respondent then entered into negotiations with the representatives of the Wilson Creek State Bank for the purchase of the note and mortgage held by it. The bank's representatives offered to sell the securities for two hundred dollars, and respondent was willing to pay that amount. Before the transaction arrived at completion, however, appellant James Strouf himself interviewed the bank's representatives and, as the result of negotiations with them, on January 12, 1937, bought the $1,760 note and mortgage for a cash consideration of two hundred dollars, and at the same time paid five hundred dollars for the return of the three one thousand dollar notes which Strouf had previously pledged with the bank. Respondent then approached Strouf and offered him $250 for the note and mortgage which the latter had purchased from the

bank. Strouf at first agreed to accept the offer, but later declined it.

Several months thereafter, respondent renewed his negotiations with the Currys, and on May 14, 1937, through his attorney, entered into an agreement with the Currys under which the latter were paid one hundred fifty dollars for a quitclaim deed to the land. In order, however, to obviate any question as to the merger of title, the deed was taken in the name of Fannie Gill, who is respondent's sister. It is undisputed that the grantee in that deed was acting as trustee for respondent.

Upon these facts, the question presented for decision is whether or not respondent's mortgage, which was the senior encumbrance upon the land, became merged into the fee subsequently acquired from the Currys by quitclaim deed, through the trustee, thereby elevating appellants' mortgage, purchased from the bank, into the position of a senior encumbrance.

The general rules applicable to the situation are well settled. The basic rule is that, upon acquisition by a mortgagee of the legal title to the mortgaged land, the question of whether or not the mortgage merges into the fee is determined by the intention, actual or presumed, of the person in whom the two estates have been united. *Connecticut Inv. Co. v. Demick,* 105 Wash. 265, 177 Pac. 676; *Van Woerden v. Union Imp. Co.,* 156 Wash. 555, 287 Pac. 870; *Anderson v. Starr,* 159 Wash. 641, 294 Pac. 581; *Hilmes v. Moon,* 168 Wash. 222, 11 P. (2d) 253, 93 A. L. R. 1; Annotation, 46 A. L. R. 322; Annotation, 95 A. L. R. 89; 1 Wiltsie on Mortgage Foreclosure (5th ed.), 428, § 246; 2 Jones on Mortgages (8th ed.), 509, § 1080.

In the *Anderson* case, *supra,* the doctrine of merger is fully expounded as follows:

"The doctrine of merger arises from the fact that, when the entire legal and equitable estates are united in one person, there can be no occasion to keep them distinct; but if there is an outstanding intervening title, the foundation of the merger does not exist as a matter of law. Equity does not favor the doctrine of merger, and even though two or more rights or estates are united in one person, equity will keep them distinct where it appears from the intention of the person, either express or implied, that he wishes them to be so kept. Whether there be such a merger depends upon the intention, actual or implied, of the person in whom the interests are united."

On the theory that a merger is a question of intention, and on the further theory that the intention of the mortgagee is presumed to coincide with his interests, the rule is well established in this jurisdiction, as well as elsewhere, that the existence of a junior, or intervening, encumbrance or equity will, in the absence of a showing of an intention to the contrary, prevent a merger of a prior mortgage in the fee, where the continued existence of the mortgage is necessary to protect the mortgagee against the intervening, junior claims. *Hitchcock v. Nixon,* 16 Wash. 281, 47 Pac. 412; *Woodhurst v. Cramer,* 29 Wash. 40, 69 Pac. 501; *Anderson v. Starr,* 159 Wash. 641, 294 Pac. 581; *Hilmes v. Moon,* 168 Wash. 222, 11 P. (2d) 253, 93 A. L. R. 1; Annotation, 95 A. L. R. 629; 1 Wiltsie on Mortgage Foreclosure (5th ed.), 434, § 248; 2 Jones on Mortgages (8th ed.), 512, §1080.

Appellants rely, however, upon what may be termed an exception to the rule last stated. That exception is embodied in the following language contained and quoted in the *Anderson* case, *supra:*

"An intervening incumbrance or equity of any kind is generally sufficient to prevent a merger of the mortgage with the equity of redemption, *provided the mortgage be not one which the owner has assumed to pay,*

*or one against which he is estopped* from defending, . . . " (Italics ours.) *Anderson v. Starr,* 159 Wash. 641, 645, 294 Pac. 581, 583.

See, also, Annotation in 95 A. L. R. 650.

 It is appellants' contention, in this connection, that, in acquiring the Currys' interest, respondent had assumed and agreed to pay the prior mortgages; and that, therefore, respondent's mortgage merged into the fee, despite the existence of the intervening encumbrances. The issue on which that contention is made presented a question of fact for determination by the trial court.

Appellants introduced evidence, through the depositions of Mr. and Mrs. Curry, tending to show that, according to the original general understanding between the Currys and respondent, the latter was to "take care" of the mortgages then outstanding. However, neither of the Currys testified that any such promise was made to them by respondent at the time that they actually sold their interest to him and executed the quitclaim deed; and Mrs. Curry testified positively that at that time nothing was said about the outstanding mortgages. Respondent denied categorically the existence of any agreement on his part to assume or to pay any other indebtedness.

The most favorable interpretation that can be placed on the evidence, so far as appellants are concerned, is that respondent had told the Currys that he was going to try to obtain the outstanding mortgages if he could. There was no agreement to *assume* the junior obligations. The memorandum opinion of the trial court indicates clearly that the issue of fact was resolved against appellants' contention, and we are in accord with the court's conclusion.

We are convinced that, under the record, there was no merger of respondent's mortgage with the title ac-

quired by him from the Currys, and that his mortgage is, therefore, a valid, subsisting lien, superior to those held by appellants.

In addition to the main question, just decided, appellants further contend, as an alleged second defense, that the decree, as prepared by respondent's counsel and as entered by the court, awarded recovery to respondent in an usurious amount. No question of usury was presented by the pleadings, nor was that matter at any time raised before the trial court. Where usury is relied on as a defense, it must be pleaded. *Brundage v. Burke,* 11 Wash. 679, 40 Pac. 343; *Grubb v. Stewart,* 47 Wash. 103, 91 Pac. 562; *Fenby v. Hunt,* 53 Wash. 127, 101 Pac. 492; *Arnot v. Fisher,* 161 Wash. 67, 295 Pac. 1116.

A question not raised in any manner before the trial court will not be considered on appeal. *Fisch v. Marler,* 1 Wn. (2d) 698, 717, 97 P. (2d) 147, 155.

However, while appellants' argument deals with the question of usury as though it were a defense in this case, we believe that their real contention in that respect is that the court gave respondent judgment in a larger amount than was justified by the facts. No assignment, however, has been made on that basis.

In any event, the alleged excess seems to be accounted for by the fact that the court allowed compound interest at a rate of ten per cent. That was not only in accord with the provisions of the note itself, but was within the rate of interest allowed by law. Simple compounding of interest, at a rate within that prescribed as legal, does not amount to usury. *Blake v. Yount,* 42 Wash. 101, 84 Pac. 625, 114 Am. St. 106.

Appellants further contend that certain items should have been deducted from the principal of the note. We have reviewed these items and, in the light of the

434

evidence on the subject, have concluded that the court did not err in its computation.

The judgment is affirmed.

BLAKE, C. J., SIMPSON, JEFFERS, and DRIVER, JJ., concur.

