[No. 22602-9-I. Division One. July 10, 1989.]

SOL M. ALTABET, ET AL, *Respondents,* v. MONROE METHODIST CHURCH, ET AL, *Appellants.*

*William L. Bishop, Jr.*, for appellants.

*Theodore M. Rosenblume*, for respondents.

WILLIAMS, J.*—The Monroe Methodist Church and Voice of China and Asia Missionary Society, Inc. (Church) appeal the trial court's determination that Sol and Estelle Altabet's (Altabets) interest in a parcel of real property was paramount to its interest. We reverse.

In 1972 the Church was given property located in unincorporated south King County. In March 1981, the Church sold the property to Pierre Ehmke by real estate contract. Ehmke paid $10,000 down and executed a note and deed of trust for the remaining $40,000. The deed of trust was recorded on August 11, 1981.

In May 1983, Pierre Ehmke borrowed $27,500 from the Altabets and executed a note and deed of trust in the same property. The terms of the note were for payments of $600 or more per month, with payment in full by May 2, 1984. This deed of trust was recorded on May 11, 1983. In June 1984, the Altabets agreed to a 6–month extension of the

---

*Judge William H. Williams is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

note. Ehmke made some payments on the note until 1987, when the Altabets decided to foreclose. A notice of default was given to Ehmke and to the Church in November 1987.

Ehmke also defaulted on the Church's note. In October 1984, Ehmke executed a quitclaim deed in lieu of foreclosure to the property in favor of the Church. This deed was recorded on November 27, 1984. In January 1988, the Church commenced foreclosure of its deed of trust.

The Altabets then brought a declaratory judgment action, seeking a declaration that the Church's deed of trust and note had been released and discharged by acceptance of the quitclaim deed and that it was therefore barred from foreclosing on the deed of trust. The trial court granted summary judgment in favor of the Altabets, ruling that the Church's deed of trust was "subordinate and junior" to the Altabets' deed of trust.

The Church contends that the trial court erred in ruling that its deed of trust was junior to that of the Altabets. The court based its ruling on principles of equitable subrogation, *see MGIC Fin. Corp. v. H.A. Briggs Co.,* 24 Wn. App. 1, 600 P.2d 573 (1979), and on the Church's failure to give timely notice. The Church argues (1) that its lien is prior by application of the recording statute, RCW 65.08.070, (2) that the doctrine of merger does not apply, (3) that the Altabets' subrogation rights were not prejudiced, and (4) that the Altabets are equitably estopped to claim priority.

RCW 65.08.070 provides that conveyances of real property may be recorded and that "[a]n instrument is deemed recorded the minute it is filed for record." The purpose of the statute is to make a deed recorded first superior to any unrecorded conveyance of the property unless there is actual knowledge of an unrecorded transfer, *Tacoma Hotel Inc. v. Morrison & Co.,* 193 Wash. 134, 74 P.2d 1003 (1938); a subsequent purchaser, without notice of the existing equities, is not required to search outside the record to inquire about them. *Diimmel v. Morse,* 36 Wn.2d 344, 347, 281 P.2d 334 (1950). Thus, if the only conveyances of the property were the two deeds of trust it seems clear that the

Church would be in the senior position. However, the fact that Ehmke gave the Church a quitclaim deed in lieu of foreclosure after the Altabets' deed of trust raises an issue of merger.

 Merger occurs when the fee interest and a charge, such as a deed of trust or a mortgage, vests in the possession of one person. *Anderson v. Starr*, 159 Wash. 641, 643, 294 P. 581 (1930).

> The doctrine of merger arises from the fact that, when the entire legal and equitable estates are united in one person, there can be no occasion to keep them distinct; but if there is an outstanding intervening title, the foundation of the merger does not exist as a matter of law. Equity does not favor the doctrine of merger, and even though two or more rights or estates are united in one person, equity will keep them distinct where it appears from the intention of the person, either express or implied, that he wishes them to be so kept.

*Anderson*, at 643. Whether there is a merger of equitable and legal title and a satisfaction and extinguishment of the underlying debt depends on the intention of the parties and is therefore a question of fact. *Van Woerden v. Union Imp. Co.*, 156 Wash. 555, 560, 287 P. 870 (1930). The doctrine of merger does not apply if there are other intervening encumbrances on the property.

> [T]he existence of a junior, or intervening, encumbrance or equity will, in the absence of a showing of an intention to the contrary, prevent a merger of a prior mortgage in the fee, where the continued existence of the mortgage is necessary to protect the mortgagee against the intervening, junior claims.

*Gill v. Strouf*, 5 Wn.2d 426, 431, 105 P.2d 829 (1940). An exception to this rule occurs when the mortgage is not one the owner intended to assume or is one against which he is estopped from defending. *Gill*, at 431–32. Whether this exception applies is also a question of fact. *Gill*, at 432.

The Altabets argued to the trial court that the quitclaim deed from Ehmke to the Church extinguished the debt,

released Ehmke from personal liability and took away the Church's ability to foreclose on the deed of trust. While a deed in lieu of foreclosure may result in a merger as a matter of law as between the mortgagor and mortgagee, it does not do so if it affects the rights of third parties. In *Anderson v. Starr, supra,* the court held that the giving of a quitclaim deed and the surrendering of a note extinguishes the debt and merges the title *as between the grantor and grantee,* but that there is no merger when there are outstanding intervening rights. *See also* 3 R. Powell, *Real Property* ¶ 469.1[4] (1987) ("If there are junior liens, courts usually assume that the mortgagee did not intend a merger which would be against his own self–interest. In the absence of affirmative intent, it is generally held that no merger occurs and such junior liens remain subordinate.") (footnote omitted); 9 G. Thompson, *Real Property* § 4738 (1958). Here, the Altabets' deed of trust, which was granted after the Church's deed of trust, but before the quitclaim deed, was such an intervening right which would preclude application of the merger doctrine. Thus, the presumption against merger applies and the quitclaim deed in lieu of foreclosure did not as a matter of law merge the Church's legal and equitable title and thereby extinguish the Church's deed of trust. As a result, the Altabets' deed of trust did not become the senior lien against the property as a matter of law and summary judgment was not proper on this theory. While the court might still find merger it only may do so after finding *as a fact* that the Church intended the legal and equitable title to merge. Thus, the case must be reversed and the court must determine whether such an intent was present.

In the summary judgment order, the trial court also found that the Altabets "have suffered sufficient prejudice to warrant equitable relief pursuant to *MGIC Fin. Corp. v. H.A. Briggs Co., supra,* that Defendants Monroe Methodist Church and Voice of China & Asia Missionary Society, Inc.

have failed to give timely and proper notice to [the Alta-bets] . . ."[1] The Church contends that *MGIC* does not control and that there was no notice it was required to give.

In *MGIC*, Briggs and Enterprise Company executed a note and deed of trust covering several properties to MGIC in 1970; these instruments were recorded in King and Pierce Counties. In 1971, Enterprise conveyed one of the properties to Davis, who did not assume the obligation to MGIC. In 1973, MGIC foreclosed on the deed of trust but did not join Davis in the action. In 1974, MGIC and Briggs reached a settlement and Briggs agreed to convey the property to MGIC free and clear of all encumbrances and MGIC agreed to release Briggs of all liability under the note and deed of trust. After the agreement was reached, but before the properties were transferred, MGIC notified Davis that the property was subject to a deed of trust. In 1977, MGIC joined Davis as a defendant in the foreclosure action. Davis' motion for summary judgment was granted and the complaint was dismissed against them.

The Court of Appeals affirmed. The court relied on the rule found in *Coyle v. Davis,* 20 Wis. 593 (1866): "Where a mortgagee has notice of a later purchaser of part of the mortgaged premises, the mortgagee's release of the mortgagor's personal liability diminishes the subrogation rights of the later purchaser and thereby operates to discharge the lien against that part of the premises sold to the later purchaser." *MGIC*, at 4. The court also adopted the rule that "a release of the mortgagor's personal liability will subordinate or even release the lien of the mortgage as to a subsequent mortgage holder." *MGIC*, at 5 (citing *Sexton v. Pickett,* 24 Wis. 346 (1869)). The rationale for the rule is that the subrogation rights of junior lienholders, which entitle a junior lienholder paying the debt to all of the rights which the senior mortgagee had against the mortgagor, must be protected against prejudicial acts by the senior

---

[1]These findings are unnecessary, CR 52(a)(5)(B), and we do not consider them on appeal. *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 586 P.2d 860 (1978).

lienholder. The holding in *MGIC,* therefore, depends upon the release of the mortgagor, as without a release there is no diminution in the junior lienholder's rights and the junior lienholder may still act to protect its interest in the property.

The Church is correct that *MGIC* does not apply to the present case. As has been noted, there was no merger as a matter of law which would have released Ehmke and extinguished the Church's interest. Nor is there any evidence in the record as it presently exists that in taking the quitclaim deed that the Church either released or intended to release Ehmke from liability. Thus, the Altabets, as the junior lienholder, still had the option of paying off the Church's interest and then proceeding against Ehmke. *See Fluke Capital & Mgt. Servs. Co. v. Richmond,* 106 Wn.2d 614, 622, 724 P.2d 356 (1986); *MGIC,* at 6. In addition, the Altabets could foreclose on their deed of trust.

Subrogation is an equitable doctrine, *MGIC,* at 6, and the Altabets argue that they were so prejudiced by the Church's failure to give them timely notice of Ehmke's default and the quitclaim deed in lieu of foreclosure that their lien should be paramount. Specifically, the Altabets contend that they incurred increased interest and costs to pay off the Church's interest, lost use of the property, lost opportunities to locate Ehmke's assets to reimburse them for payment of the Church's interest, lost financial incentives to pay off the Church and seek subrogation from Ehmke, and lost equity in the property. However, this argument rests on the Altabets' incorrect reading of *MGIC* that a deed in lieu of foreclosure acts as a release as a matter of law. In addition, in *MGIC* the senior lienholder (MGIC) had notice of the junior lienholder's (Davis) interest when it agreed to the release. On the state of this record, there is no evidence that the Church had any knowledge of the Altabets' interest or that it agreed to a release of Ehmke's interest to the Altabets' prejudice. Thus, at this point in the litigation, there is no basis on which to apply the doctrine of equitable subrogation to discharge the

Church's lien and make the Altabets the senior lienholder in the property. Application of the doctrine may be appropriate if the court determines that there was a merger as a matter of fact.

Because of our resolution of the case, we need not discuss the Church's contention that the Altabets are equitably estopped to claim priority. The case is reversed and remanded for trial.

GROSSE, A.C.J., and WEBSTER, J., concur.