[No. 2377. Decided December 24, 1896.]

E. W. HITCHCOCK, *Respondent*, v. CORA E. NIXON, *Administratrix, et al., Defendants*, FRED L. GEDDIS, *Appellant*.

MORTGAGES — PRIORITIES — MERGER.

A court of equity will not compel a merger where land is deeded to a prior mortgagee, if subsequent to the making of the mortgage the grantor has burdened the land with a second mortgage.

Although the doctrine of non-merger may prevail in the interest of a mortgagee acquiring legal title to land, when such mortgage is paid, the question of non-merger cannot be kept alive for the benefit of a subsequent incumbrancer of the grantee.

The payment of a mortgage is not such a personal right as can be pleaded only by the original parties to the mortgage, but a junior mortgagee has the same right to plead it.

Where mortgaged premises are deeded to the mortgagee, burdened with a subsequent mortgage, which has been properly recorded, and the grantee himself executes a mortgage thereon to other parties, the latter must be held as taking a lien subject to that of the junior incumbrance on the land at the time of its conveyance from the original mortgagor to the original mortgagee, as the doctrine of non-merger in favor of the original mortgagee cannot be taken advantage of by the last mortgagee.

Since a mortgage conveys no title, under the laws of this state, a mortgage of real estate is not a purchase within the meaning of the recording laws.

Appeal from Superior Court, Kittitas County.—Hon. CARROLL B. GRAVES, Judge.     Reversed.

*Ralph Kauffman*, for appellant.

*Eugene E. Wager*, and *Will G. Graves*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—One F. H. Wilkin borrowed $5,000 of the Merchants National Bank of Tacoma, and Thomas L. Nixon became his surety on the note given for the same.     To indemnify Nixon, Wilkin executed to him a mortgage, on the land involved in this case, for the sum of $5,000, on the 21st day of January, 1887.     On December 10, 1887, Wilkin executed a mortgage on the same land, together with some other land, to one S. R. Geddis, to secure a note for $1,471.     On December 17th of the same year, Wilkin deeded the land to Nixon.     On December 28, 1888, Wilkin having defaulted, Geddis instituted a suit to foreclose his mortgage, making Nixon and Wilkin parties defendant. Wilkin defaulted and Nixon answered, setting up the fact that he had a superior mortgage of $5,000, and that no part of it had been paid.     During the pend-

ency of this trial, Nixon and wife executed and delivered to respondent, E. W. Hitchcock, their promissory note for the sum of $2,000, and to secure the payment of said note executed and delivered to said Hitchcock their mortgage on the land in controversy. Upon the trial of that suit, viz., the suit between Geddis as plaintiff and Wilkin and Nixon as defendants, judgment was taken against Wilkin for the sum of $2,032.95, attorney's fees and costs, and it was adjudged that Geddis's lien was superior to any right, title or interest which Nixon had, except as to whatever right or title he had under and by virtue of the mortgage hereinbefore mentioned. Execution was issued and a sale of the property was ordered.

And right here we will notice the contention of the respondent that Geddis was bound by the decree in this case, which, it is alleged, established the priority of the Nixon mortgage over his. A perusal of the decree satisfies us that there was no priority established by the court in that case. The language of the decree was that, "the Geddis lien was superior to any right, title or interest which the defendant Nixon had in or to the said described real property or any of it, except as to whatever right or title said defendant Nixon may have under and by virtue of a mortgage" (describing it). The interest which Nixon had, or claimed to have, was not in any way determined or passed upon by the court in that case. If he had any interest, it is fair to construe the decree as establishing it as a paramount interest. But there was no attempt to establish the fact that he had any interest, or, if he had, what that interest was. The property was sold upon the execution issued in this case, and all rights under the execution were assigned to Fred L. Geddis, the appellant here.

Nixon died while holding the legal title to the land, and in 1891 Wilkin brought an action against J. D. Caughran, administrator *de bonus non* of the estate of Thomas L. Nixon, deceased, Cora E. Nixon, Helen Nixon, Ansell Crosby, assignee of H. C. Crosby, and E. W. Hitchcock. In this suit there was an accounting. It was found by the court that the note for the $5,000 to the Merchants National Bank, which was indorsed by Thomas L. Nixon and for which the mortgage above referred to was given, had been paid and was ordered canceled and held for naught. It was also ordered and adjudged that the deed from Wilkin to Nixon "is declared to be and is held to be a deed of trust for the sole use and benefit of the plaintiff" Wilkin, and that "the creditors of Thomas L. Nixon never had or took any interest in the land therein conveyed, and the same is hereby canceled and adjudged null and void." It was adjudged that Wilkin was the sole and legal owner of the land described in the deed of trust; that the mortgage given by Wilkin to Nixon was fully paid and satisfied and was null and void, and that the same be canceled and held for naught; and a commissioner was appointed who was authorized and directed to cancel upon the records the mortgage executed by Wilkin to Nixon, and another commissioner appointed, empowered and directed to convey by deed to the plaintiff Wilkin the legal title to the lands theretofore conveyed by Wilkin to Nixon. Geddis was not made a party to this suit. The present action was brought by the respondent Hitchcock, Nixon's mortgagee, who prays judgment against the defendant Fred L. Geddis, the appellant here, that the lien of said Geddis, if any he has, be declared subsequent and inferior to the lien of plaintiff's mortgage, and that he recover his costs and dis-

bursements herein from the said defendant Fred L. Geddis. A great many other persons were made defendants to this action, and a great many other findings of fact were made in the prior cases referred to; but, as we view the law of this case, it is not important to mention them.

The court, as conclusions of law from the statement of facts agreed upon, and the findings of fact made by the court in this case, concludes, among other things, that plaintiff is entitled to a decree foreclosing a mortgage on the west half of section 30, township 17 north, range 20 east of the Willamette meridian, which is the land in dispute, and to a decree ordering the sale of said premises and the application of the proceeds to the payment of the amount above set out, and a judgment against Cora E. Nixon for any deficiency that may arise after applying the proceeds of the sale of said premises to the satisfaction of said amounts, and, further, that the interests of the liens of the defendant Frank H. Wilkin, S. R. Geddis and others are subsequent and inferior to the lien of plaintiff's mortgage and are subject thereto. From this last conclusion, viz., that the liens are subsequent and inferior to the lien of the respondent, this appeal is taken.

We have examined the cases cited in the briefs of the parties to this action and all the cases that we have been able to find bearing on this case, but from such research we have been unable to find a case that presents exactly the facts that are presented here. A great portion of the respondent's brief is taken up in discussing the subject of merger and non-merger, and it is claimed that when Wilkin deeded the land which he had theretofore mortgaged to Nixon, there was no merger, and that Nixon had a right to be protected against the outstanding mortgage of Geddis by his

prior mortgage. We do not think that under the al-
most universal authority, this proposition can be
questioned. It was evidently to Nixon's interest that
there should not be a merger; and that being true, a
court of equity would not compel the merger. That
would have been true in this case no doubt on the
face of the transaction, but the finding of the trial
court in the case of Wilkin *v.* Nixon and others es-
tablished the fact of the intention of the parties on this
proposition. The court in this case we presume held
that Hitchcock took Wilkin's interest in the mort-
gage *pro tanto*, and was subrogated to the extent of his
mortgage to Wilkin's interest. The record, however,
shows that the mortgage from Wilkin to Nixon has
been paid and satisfied.

It is claimed, however, by the respondent that,
under the authorities — and many authorities are
cited to sustain the contention — the payment of
this mortgage was a personal right which could have
been pleaded by the original parties to the mortgage,
or in this case by Wilkin, but could not be pleaded or
shown by Geddis. We think the authorities do not
sustain this contention, and do not bear upon this
kind of a case. Most of the cases cited were cases of
duress or legal inability on the part of the contract-
ing parties to contract, as coverture, duress, etc. But
these propositions, it seems to us, are not controlling
in this case, for, conceding that there was no merger
so far as the interests of Nixon were concerned, it does
not follow that the principle of non-merger prevails
to the extent of aiding or protecting the respondent's
interests, if, as announced in § 794 of Pomeroy's
Equity Jurisprudence,

" Whatever may be the circumstances, or between
whatever parties, equity will never allow a merger to

be prevented and a mortgage or other security to be kept alive, when this result would aid in carrying a fraud or other unconscientious wrong into effect, under the color of legal forms. Equity only interposes to prevent a merger, in order thereby to work substantial justice."

In this case it is difficult to see upon what principle respondent Hitchcock invokes the doctrine of non-merger, for while it may have been sustained to protect Nixon's interest against the wrongful encroachment of Geddis's lien, so long as Nixon had any interest in the mortgage, it appears from the stipulated facts, judicially determined in a case to which Hitchcock was a party and which has not been appealed from, that the note, for which Nixon was responsible and as indemnity for which he received the mortgage from Wilkin, was fully paid, and all but a trifling amount was paid even before Hitchcock's mortgage was executed. The mortgage then being paid, all questions of merger or non-merger disappeared and cannot be kept alive for the benefit of a subsequent incumbrancer.

Moreover, as effecting the small portion which had not been paid at the time of the execution of the Hitchcock mortgage, we are unable to understand how it can be held that Hitchcock, by reason of his mortgage, became *pro tanto* a purchaser of Nixon's interest in the property both legal and equitable, and succeeded to Nixon's right to have the mortgage stand out against the property; for, at the time Nixon executed this mortgage to Hitchcock, he must have executed it under the power and authority of the deed which he had received of Wilkin, and Hitchcock must have relied upon his title through the deed and not upon any interest Nixon had in the outstanding mort-

gage. For the legal title was in Nixon, and, if it had not been so, he could not have executed the mortgage to Hitchcock at all. The rehearsal in the mortgage itself that Nixon was the owner of the land is sufficient to show this. Hitchcock, then, relying upon the title which was in Nixon, with notice of the Geddis mortgage, which must be imputed to him by reason of its proper recording, must, in contemplation of law, have bought subject to the Geddis mortgage. The quotation from Jones on Mortgages to the effect that a mortgage of real estate is a purchase within the meaning of the recording laws, and that "a mortgagee is to the extent of his claim a purchaser of the land," can have no application to mortgagees in this state where a mortgage conveys no title.

The judgment will be reversed and the lower court instructed to establish the priorities in accordance with this opinion.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.