[No. 10944. Department Two. May 16, 1913.]

JOHN P. BUNGER, *Appellant*, v. BENJAMIN PRUITT *et al.*, *Respondents.*[1]

APPEAL—REVIEW—FINDINGS. On a trial *de novo* on appeal, the supreme court must examine the evidence and determine what findings should have been made.

MORTGAGES—FORECLOSURE — RELEASE—EVIDENCE—SUFFICIENCY. In an action to foreclose a mortgage, findings that a quitclaim deed was given with intent to release the mortgage lien are not sustained by the evidence, and it is error to deny a foreclosure of the mortgage, where it appears that plaintiff, a married man, sold and conveyed the property to defendants by a deed in which his wife did not

[1] Reported in 132 Pac. 237.

join, it being separate property, and claimed that the quitclaim deed, in which his wife joined, was given only to assure the title; and defendants' testimony that it was intended as a release of the mortgage, to prevent plaintiff's wife from claiming any interest in the property, is unreasonable and improbable and inconsistent with statements made by the defendants to several disinterested witnesses.

EQUITY—MISTAKE—RELEASE OF MORTGAGE. Where a quitclaim deed is given by a mortgagee for the purpose of curing a former deed, without intent to have it operate as a release of the mortgage lien, there is such a mistake as a court of equity will relieve.

Appeal from a judgment of the superior court for Columbia county, Miller, J., entered January 26, 1912, upon findings in favor of the defendants, in an action to foreclose a mortgage. Reversed.

*A. F. Appleton*, for appellant.

*Hardy E. Hamm*, for respondents.

CROW, C. J.—Action by John P. Bunger against Benjamin Pruitt, Cora Pruitt, his wife, Walter W. Weygandt, George Brown, and Fannie Brown, his wife, to foreclose a real estate mortgage. The trial court entered a personal judgment for the debt, but made a finding that the mortgage lien had been released, and refused a decree of foreclosure. Plaintiff has appealed.

It is conceded that, many years since, appellant, then a single man, acquired title to one hundred sixty acres of land in Columbia county; that later he married, but on June 11, 1910, was living separate and apart from his wife; that, on the date last mentioned, for the consideration of $1,000, he sold, and by warranty deed, executed by himself alone, conveyed the land to the respondent Benjamin Pruitt, who then paid him $200 in cash; that, on the same date, Benjamin Pruitt and Cora Pruitt, his wife, executed and delivered to appellant their promissory note for $800 for the remainder of the purchase money, which they secured by their mortgage deed on the land, which mortgage appellant now seeks to foreclose; and that, on July 13, 1910, appellant and Edna

Bunger, his wife, executed and delivered to Benjamin Pruitt a quitclaim deed for the same land. The controlling question on this appeal is whether the quitclaim deed was executed for the purpose of quieting respondents' title against any possible claim of Edna Bunger, as appellant's wife, or for the purpose of releasing the mortgage lien.

Respondents, while admitting their liability on the note, in their answer alleged that the quitclaim deed was for the latter purpose. Appellant contended, and in substance asked the trial court to find, that, on the 20th day of June, 1910, he, without the joinder of his wife, sold and conveyed the land to Benjamin Pruitt; that later Benjamin Pruitt requested a deed executed by appellant and his wife, in order that the record might show appellant's wife had conveyed all her interest, if any she had, in the land; that the quitclaim deed was executed for the sole purpose of correcting the previous conveyance in that respect; and that it was not appellant's intention that the quitclaim deed should satisfy or discharge the mortgage theretofore executed by respondents. These findings were refused by the trial judge, who, at respondents' request, in substance found: that, for some time prior to July 13, 1910, the date of the quitclaim deed, appellant and his wife, Edna Bunger, were living separate and apart; that Mrs. Bunger was then threatening an action for divorce; that appellant contemplated removing to the state of Missouri; that he feared his wife, in her proposed action for divorce, would assert or attempt a recovery of some interest in the land or the mortgage deed; that the quitclaim deed was not made for the purpose of correcting the title or any former deed, but was executed with the expressed intention of discharging the mortgage lien; that appellant, with such intention, and without persuasion or fraud on respondents' part, induced his wife to sign, seal, and acknowledge the quitclaim deed.

Appellant insists that the trial judge erred in refusing his requested findings, and in the findings made. This action

is before us for trial *de novo*. Although this court gives much consideration to the findings of a trial judge made upon conflicting evidence, it is, nevertheless, our duty to examine the evidence disclosed by the statement of facts, and determine what findings should be made. Appellant testified that Benjamin Pruitt told him Mrs. Pruitt was dissatisfied with the first deed, in which appellant's wife had not joined; that he, Benjamin Pruitt, was satisfied, but that Mrs. Pruitt would feel easier in mind if appellant and his wife would execute another deed; that, to satisfy them, appellant prevailed upon his wife to join him in the execution of the quitclaim deed, which was executed and delivered for the sole purpose of protecting respondents against any possible claim that appellant's wife might assert; and that at no time was the quitclaim deed intended as a release of the mortgage. This evidence was denied by respondents Pruitt and wife, who testified that, after the execution of the first deed, appellant told them his wife was threatening to sue for a divorce; that he was determined she should have none of his property; that he would prefer the Pruitts to have it; that he would induce his wife to join him in a quitclaim deed, which would release the mortgage; that he would then hold the note against respondents, trusting them for its payment; and that he would take the note to Missouri where his wife could not reach him. This evidence was denied by appellant. It appears that later appellant's wife did obtain a divorce. A scrivener, who drew the quitclaim deed at appellant's request, testified that, a short time after its delivery, he asked the respondent Benjamin Pruitt whether he knew the quitclaim deed when recorded would operate as a release of the mortgage, and that Mr. Pruitt replied, "Well, if it does release the mortgage I would not do the old man (appellant) any way." A clerk of the scrivener testified to the same conversation, which Mr. Pruitt substantially admitted, but attempted to explain by saying he then meant to convey the idea that he would pay the note, which he testified he

could not pay at the time of the trial. L. B. Kenworthy, an attorney at law, testified that, about July or August, 1910, respondent Benjamin Pruitt, without retaining or compensating him, asked him what effect a quitclaim deed would have on a mortgage previously executed, the deed being from the mortgagee to the mortgagor, and that the witness told him it would discharge the mortgage lien. If this conflicting oral evidence stood alone, we might feel constrained to approve the findings of the trial judge, who saw the witnesses and heard them testify, but when it is considered and weighed as it must be in connection with the written instruments executed and recorded, and the admitted relations of all parties, we conclude that the findings which appellant requested should have been made. It seems to us that respondents' version is improbable and unreasonable. The note has never been paid, and no consideration passed from respondents to appellant for the quitclaim deed. If appellant, as respondents contend, had by his first deed, conveyed the fee simple title, and only desired to release the mortgage, it is difficult to understand why appellant did not execute a written release in the form provided by Rem. & Bal. Code, § 8798, or why he did not enter a release upon the margin of the mortgage record in the office of the county auditor, as authorized by the same section. Either of these methods would have occasioned less trouble and expense. On the other hand, if respondents, as they contend, were dissatisfied with the first deed, and desired a conveyance of any interest appellant's wife might possibly assert, their demands could be satisfied only by a deed in which appellant's wife would have to join. It was not necessary that Mrs. Bunger should join her husband in the execution of a valid release of the mortgage lien. Mr. Bunger could have executed that alone. The note, by its terms, was to mature five years after its date if the installments of interest were promptly paid. It was declared due for nonpayment of interest, when this foreclosure action was commenced. Re-

spondents have paid nothing on the note, nor have they parted with any valuable consideration to obtain a release of the mortgage, and we are satisfied that appellant never intended to discharge the mortgage lien.

The other defendants herein, answering jointly with Pruitt and wife, pleaded a subsequent lien obtained by them from respondents Pruitt and wife, after the execution, delivery and record of the quitclaim deed. These allegations were denied by the reply, and there is no evidence in the record to sustain them. This case must, therefore, be determined upon equities arising in appellant's favor, as against the respondents Pruitt and wife alone, no rights of innocent third parties having intervened.

"A release or satisfaction entered by accident or inadvertence, as where it is made to apply to the wrong mortgage, or by a mistake as to an essential fact, so that it is not in accordance with the real intention of the party, may be set aside and the mortgage reinstated, although not to the prejudice of third persons subsequently dealing with the property in good faith, in reliance on the release or satisfaction, and without notice of the accident or mistake.

"When a mortgage has been canceled or discharged, but without actual satisfaction, it may be reinstated and enforced as a lien by the agreement of the parties, or, against the will of the mortgagor, on the occurrence of circumstances which give the mortgagee the right to rescind the cancellation or release and require full satisfaction; and this right, if resisted, may be enforced by suit in equity, although not to the prejudice of the intervening rights of third persons without notice." 27 Cyc. 1433.

If it be conceded that the quitclaim deed is a valid and proper form of release, it never took effect as between the mortgagors and mortgagee. We hold the evidence insufficient to sustain a finding that the quitclaim deed was given for any valuable consideration passing from respondents to appellant, or that it was intended by appellant as a release of the mortgage lien. At most, a mistake was made by appellant which a court of equity should correct.

May 1913]          Opinion Per Curiam.

The judgment is reversed, and the cause is remanded with instructions to enter a decree of foreclosure.

FULLERTON, MORRIS, MAIN, and ELLIS, JJ., concur.