[No. 14985.  Department One.  January 10, 1919.]

## CONNECTICUT INVESTMENT COMPANY, *Respondent*, v. VAN B. DEMICK *et al.*, *Appellants*.[1]

MORTGAGES (109, 110)—MERGER OF TITLES—INTENTION—EXPRESS AGREEMENT.  A second mortgage, assigned to an investment company, is not merged by a quitclaim deed to the assignee with an agreement to reconvey, the deed being given to secure advances for taxes, where that was not the intention, there being an express agreement that the mortgage remain in force and payments made thereon.

SAME (57)—BONA FIDE HOLDER—PREEXISTING DEBT.  Where a subsequent mortgage was taken for a pre-existing debt, the mortgagee is not a holder for value as against a prior mortgage supposed by him to be released.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered April 6, 1918, in favor of the plaintiff, in an action to foreclose a mortgage, tried to the court.  Affirmed.

*Skuse & Morrill,* for appellants.

*Zent & Powell,* for respondent.

MACKINTOSH, J.—The plaintiff is endeavoring to foreclose a mortgage upon certain property the title to which is in the appellant Demick.  This property, on April 30, 1912, was owned by one Kornmeyer, at which time there existed upon it a first mortgage given to the New World Life Insurance Company to secure the payment of $4,200.  Kornmeyer, on that date, executed a second mortgage upon the property, which, on June 12, 1914, was assigned to the plaintiff, the assignment being filed for record September 2, 1914.  This is the mortgage involved in this proceeding.  On June 7, 1913, Kornmeyer conveyed the property by

[1]Reported in 177 Pac. 676.

warranty deed to one Strong, who, on August 30, 1913, conveyed the premises by warranty deed to one Katsel. Katsel, on August 28, 1914, conveyed the premises to the respondent by quitclaim deed, which was recorded on September 2, 1914. This quitclaim deed was given to secure advances which respondent had made for the payment of taxes, and the payment of delinquent installments of principal and interest on the first mortgage. These payments were made by the respondent in order to protect its second mortgage.

At the time the quitclaim deed was made by Katsel, respondent gave back to him a written agreement to reconvey the property to him upon the refunding by him of the advances just referred to. In legal effect, this deed amounted, therefore, to a third mortgage. This instrument was recorded on April 2, 1915. On December 16, 1914, after having quitclaimed to the respondent, Katsel assigned to one Grube all his right, title and interest in the premises, which amounted to a transfer of the respondent's agreement to reconvey upon the repayment of advances made by it. During Grube's ownership he reduced the amounts due upon both the first and second mortgages and satisfied the advances previously made by the respondent. These reductions left the total indebtedness on both the first and second mortgages in the sum of $5,002.82. Grube received from the respondent a quitclaim deed, as had been provided for in the Katsel agreement. This instrument was dated September 1, 1914, and ran from the respondent to Grube. It was never recorded while in the possession of Grube, but, as we will subsequently show, became the deed from the respondent to appellant Demick. February 11, 1915, Grube and the appellant Demick entered into a written agreement for the transfer to Demick of this property, subject to the

mortgage indebtedness, the agreement providing that Grube was "—to convey by quitclaim deed through the Connecticut Investment Company" to Demick the property in question, subject to a mortgage debt of $5,002.82. After this agreement had been signed by both the parties, Grube produced the unrecorded deed from the respondent to himself, and he and Demick went to the respondent's office and there the name of Grube, as grantee, was erased from the deed and Demick's name was substituted, this being done to save the expense of recording two deeds and the abstract expense connected therewith. This deed, therefore, bore date of September 1, 1914, although the transfer to the appellant Demick took place early in 1915 and the deed was recorded on April 2, 1915. In the deed from Kornmeyer to Strong and from Strong to Katsel, as before indicated, the grantees assumed and agreed to pay the first, or New World Life Insurance Company's mortgage, as well as the second mortgage now being foreclosed, but in the deeds from Katsel to respondent and from respondent to Demick, no mention is made of this second mortgage. The testimony shows, however, that Demick understood that there were two mortgages upon the property and agreed to assume both of them, stating in his agreement their totals. That he so understood is proved by testimony in addition to that furnished by the agreement itself. Demick neglected to make these mortgage payments, and it was when they had become in default, Demick, on May 19, 1917, gave a mortgage to the appellant Muller, this mortgage being given to secure a pre-existing obligation between Demick and Muller.

The contention of the appellant Demick is that, by the assignment of the mortgage to the respondent and the quitclaim deed from Katsel to the respondent, the

entire title to the property being thereby vested in one person, the lesser title, that is, the mortgage, became merged in the greater and the mortgage was thereby extinguished, and that the respondent, by its deed to Demick conveying all his right, title and interest, included thereby whatever interest it may have had at any time in the mortgage as a lien upon the property. Was there a merger of the legal and equitable titles? That such merger can exist, there is no question, for it has been so decided in this court: *Chase Nat. Bank v. Hasting*, 20 Wash. 433, 55 Pac. 574; *Tolsma v. Adrian*, 32 Wash. 383, 73 Pac. 347; *Summy v. Ramsey*, 53 Wash. 93, 101 Pac. 506.

But the facts in the instant case do not bring it within the operation of the rule announced in those decisions, for here we have an express agreement that the second mortgage, that is, the respondent's, should remain in force, as is witnessed by the written agreements-between the respondent and Grube, between Grube and Demick, and by the oral agreement made at the time the deed was changed and Demick's name substituted as grantee, this being testified to by numerous witnesses. Demick's agreement to make payments on the mortgage after the quitclaim deed had been given to him bears witness to the fact that he understood and recognized the second mortgage as being still in force. The courts hold, under some circumstances, that the legal and equitable title are merged, but they recognize no such merger contrary to the understanding and agreement of the parties interested in the title. *Hitchcock v. Nixon*, 16 Wash. 281, 47 Pac. 412; *Stewart v. Eaton*, 20 Wash. 378, 55 Pac. 314; *Fitch v. Applegate*, 24 Wash. 25, 64 Pac. 147; *Bunger v. Pruitt*, 73 Wash. 569, 132 Pac. 237.

An inquiry into the circumstances with the idea of determining whether a merger was intended by the

parties, which inquiry is always made in such cases, shows that the parties had no idea that a merger had taken place, or was to take place. We are satisfied that the appellant Demick never anticipated that he was obtaining title to this property freed from the second mortgage, and his present claim is palpably an afterthought, the result of his present desire and not of his past agreement, and rests for its support upon the confusion which exists in the record of the title to this property, due to the numerous deeds, agreements and instruments, which were exchanged with considerable frequency and more irregularity. We have attempted in the statement of the case to refer only to those instruments which, in our judgment, have any bearing on the issues here presented. The record discloses, however, that there were additional transfers of title, which are confusing but immaterial to the present inquiry.

The claim of the appellant Muller can have no priority over the respondent's mortgage, although he asserts that he is entitled to priority because he relied on the respondent's quitclaim deed as releasing its second mortgage to Demick. This situation can avail him nothing, for the reason that his mortgage was taken for an indebtedness which existed prior to the deed and the incidents connected with this case, and there was no consideration for his mortgage other than such preexisting indebtedness or obligation. Under our decisions, he is not a *bona fide* holder for value. *Hicks v. National Surety Co.,* 50 Wash. 16, 96 Pac. 515, 126 Am. St. 883; *Thomas v. Grote-Rankin Co.,* 75 Wash. 280, 134 Pac. 919.

Judgment affirmed.

MAIN, C. J., CHADWICK, MITCHELL, and TOLMAN, JJ., concur.