[No. 23323.   Department Two.   May 16, 1932.]

A. M. HILMES *et al., Appellants,* v. H. C. MOON *et al., Respondents,* RALPH G. MILLER *et al., Defendants,* OLYMPIA NATIONAL BANK, *Appellant.*[1]

[1]Reported in 11 P. (2d) 253.

*Dan Landon, Roberts, Skeel & Holman,* and *Wm. Paul Uhlmann,* for appellants Hilmes *et al.*

*Yantis & Brodie,* for appellant Olympia National Bank.

*Rummens & Griffin,* for respondents Moon *et al.*

*Frank C. Owings,* for respondents Hart *et al.*

BEALS, J.—Defendants Ralph G. and Grace Miller, under date March 20, 1926, executed their promissory note for $15,000, payable to Northwest Savings & Loan Association, and, to secure the same, mortgaged a tract of land in Thurston county bordering on Long lake. Later, Mr. and Mrs. Miller conveyed the property to Long Lake Amusement Company, a corporation, which thereafter became Long Lake Country Club.

The note above referred to provided for monthly

payments of not less than $300 per month, and October 14, 1926, suit was instituted on the note by the payee therein named, who sought judgment thereon against Mr. and Mrs. Miller, together with the foreclosure of the mortgage. Many defendants were named in this action, who, it appears, had claims against the property, most of them being for labor or material furnished for the improvement thereof subsequent to the date of the mortgage. A few of the defendants answered and filed cross-complaints, seeking foreclosure of their liens, while orders of default were entered against the greater number.

July 18, 1927, an order was entered substituting Guaranty Trust Company as party plaintiff, the order reciting that the new plaintiff had succeeded to the rights of the former as owner of the note and mortgage. A few days later, an order of default was entered against defendants Miller and the corporation to which they had conveyed the property. This order of default was followed by the entry of findings of fact, conclusions of law and a decree of foreclosure, all bearing date July 20, 1927.

It seems that, November 16, 1926, Mr. and Mrs. Miller, appearing by Harry L. Parr, Esquire, their attorney, had served upon plaintiff's counsel an answer to the complaint. This answer was not filed until August, 1927, when Messrs. Pemberton & Robinson were formally substituted as attorneys for the Millers. August 30, 1927, Mr. and Mrs. Miller filed in the proceeding an answer and cross-complaint, in which certain relief, the nature of which is not here important, was sought against the substituted plaintiff. March 31, 1928, the order of default entered against Mr. and Mrs. Miller during the preceding July and the subsequent decree were vacated, and shortly thereafter it

was stipulated that the Millers' cross-complaint be dismissed with prejudice.

August 12, 1929, an order was entered substituting A. M. Hilmes and L. H. Darwin as parties plaintiff, the order reciting that they had succeeded to the interest of the first substituted plaintiff. By this order, the new plaintiffs were permitted to file a supplemental complaint and bring in additional parties defendant. The supplemental complaint was filed on the date· of the entry of the order granting permission to file the same, and by it C. M. Oneill and Emma Oneill, his wife, and H. C. Moon and wife were made parties to the action, under an allegation that they claimed some interest in the property junior to the substituted plaintiffs' interest therein by virtue of the mortgage. In this supplemental complaint, judgment was demanded against Ralph G. and Grace Miller, the makers of the note sued upon, the foreclosure of the mortgage was prayed for, together with other relief usually incident to such an action. This supplemental complaint was signed by Daniel Landon, Esquire, as attorney for plaintiffs.

During the month of August, 1927, Roy McGovern sued Long Lake Country Club, alleging an indebtedness due him from that corporation. In this action, R. Franklin Hart was appointed receiver of the corporation, and retained Frank C. Owings, Esquire, as his attorney. Messrs. Hart and Owings were by the court each allowed $1,000 for services rendered, on account of which they each received $400, the balance of the fees allowed being unpaid.

In the supplemental complaint filed in this action, Messrs. Hart and Owings were named as defendants because of their claims against the real property which is the subject matter of this action, based upon the allowances made them in the action brought by Mr. Mc-

Govern. In the last mentioned action, Mr. Hart, as receiver, had, under order of the court, sold the property of the corporation, including the land covered by the mortgage, Messrs. Hart and Owings having been by the court awarded paramount liens for the allowances made to them on account of their services.

The purchaser of the property at the receiver's sale subsequently conveyed the real property to W. H. Pemberton, Roy D. Robinson and the defendant C. M. Oneill, in several, though undivided, interests, and thereafter, July 26, 1929, these three partitioned a portion of the land in severalty to Mr. Pemberton, Mr. Robinson and to Mr. Oneill, the remaining portion of the tract being continued in the joint ownership of the three as tenants in common, the land not partitioned being that portion first described in the release clause of the extension agreement as being a portion of lot seven.

May 4, 1928, Guaranty Trust Company, being at that time the owner of the note and mortgage sued upon herein, executed a so-called "extension agreement" in the following form:

"For and in consideration of the sum of $1.00 to us in hand paid, the time for payment of that certain real estate mortgage given by R. G. Miller and Grace Miller, his wife, to the Northwest Savings & Loan Association on March 20, 1926, to secure the payment of $15,000, according to the terms of certain promissory notes, said mortgage being recorded in Volume 24, page 388 of Records of Mortgages of Thurston County, State of Washington, said mortgage and notes thereby secured having been assigned by the Northwest Savings & Loan Association to the undersigned, Guaranty Trust Company, of Portland, Oregon, is hereby extended as follows:

"The amount now agreed to be due upon said mortgage, including interest, costs, expenses and attorney

fees incurred in foreclosure proceedings, is $21,500.00. Payment of this amount is extended as follows:

"$5,000.00 thereof to be paid on or before one year after date, and the remainder of the principal on or before two years after date, with interest on all deferred payments at the rate of 7% per annum, interest to be paid annually.

"It is further agreed that tracts or lots of said land securing said mortgage indebtedness shall be released from the lien of said mortgage upon the payment of the following amounts to the Olympia National Bank, Olympia, Washington, to the credit of the undersigned or its nominee.

"Upon payment of $7,500.00, the undersigned shall release that portion of Lot 7, Section 26, Township 18 North of Range 1 West, W. M., Thurston County, Washington, described as follows:

"Beginning at the northwest corner of said Lot 7, thence in a southeasterly direction along the meander line of said lot to the southeast corner of the bath house, thence south to a stake on the road, thence following the road west to the west line of said Lot 7, thence north to the place of beginning, containing 8 acres more or less; together with the shore lines abutting upon said property.

"Upon the payment of $250 per acre, upon all other lands adjacent to and within 150 feet of the shore of Long Lake; and any of the other lands described in said mortgage shall be released upon the payment of $125 per acre.

"Lots or tracts of less than an acre shall be released upon the payment of the proportional part of the amount to be paid upon one acre as hereinbefore provided.

"Provided, however, that no tract or parcel of land fronting on Long Lake shall be released unless said tract and parcel shall extend 150 feet back from the shore of said lake.

"When the full amount of $21,500, together with interest at 7% per annum thereon has been paid, the mortgage lien shall be released in full. If said amount is not paid in full within two years from the date here-

of, then the mortgage may be foreclosed for any amount remaining unpaid.

"In Witness Whereof, the Guaranty Trust Company has caused its lawful corporate seal to be hereunto affixed and its name to be hereto subscribed by the hands of its president and secretary this 4th day of May, 1928. Guaranty Trust Company,

By A. J. Perkins, President

(Seal) By H. M. Maloney, Secretary."

After the filing of the partition deed, Mr. and Mrs. Oneill by written contract agreed to sell to defendants H. C. Moon and wife a small portion of the Oneill tract.

April 24, 1929, Mr. Oneill deposited with Olympia National Bank (named in the foregoing extension agreement) $145.53, and demanded a release of the tract which he had agreed to sell Mr. Moon from the lien of the mortgage. On the afternoon of the same day, Mr. Oneill again called at the bank and tendered the sum of $3,266.38 in cash, handing to the bank the following written tender:

"To the Olympia National Bank:

"Commencing at the southeast corner of the Lowery tract recorded in Volume 118 at page 9 of Deed Records for Thurston County, Washington, in Lot 5, section 26, township 18, N. R. 1. W. of W. M. on West side Long Lake, at a point where the South line of said tract intersects the shore line of said Long Lake, thence in a southerly direction 2,000 feet along the shore line of said lake, thence 300 feet west, thence in a Northwesterly direction, parallel with and 300 feet distant West from the shore line of said lake, 2,000 feet to the South line of said Lowery Tract, thence East to the shore line of said lake at the place of beginning of this description, less .0462 of an acre, and being 13.25 acres.

"Release demanded by C. M. O'Neill, said property from the mortgages of the Guarantee Trust Company of Portland, Oregon, and the Wholesaler's Association of Tacoma, Washington, for which a tender is made of $3,266.38.

"Recorded in books 35, page 628 of Mortgages and also book 35, page 629, Mortgages, Thurston County, Washington.

"Dated April 24, 1929.            C. M. O'NEILL."

The bank did not accept the money, and its vice-president wrote at the end of the written tender:

"Refused acceptance of the money because of lack of authority.        THE OLYMPIA NATIONAL BANK,
                    E. M. McCROSKEY, Vice Pres."

June 3, 1929, Guaranty Trust Company released from the lien of its mortgage, in favor of Mr. Pemberton, 22.41 acres of the land covered by the mortgage, and credited $3,795 upon the indebtedness referred to in the extension agreement.

In their supplemental complaint above referred to, Messrs. Hilmes and Darwin alleged the execution of the original promissory note for $15,000, together with the mortgage securing the same. They also alleged the institution of this action by Northwest Savings & Loan Association, the original payee named in the note, and the subsequent transfer thereof to Guaranty Trust Company, the making of the extension agreement and the subsequent assignment to the plaintiffs.

The supplemental complaint also alleged that payments called for by the mortgage and extension agreement had not been made, and that plaintiffs had elected to declare the entire amount thereof immediately due and payable in the full sum of $19,528.21, for which sum, together with interest, $2,000 by way of attorney's fee and some other items, judgment was demanded, together with foreclosure of the mortgage; the foreclosure being asked for as against all the land covered by the mortgage, save the tract which had theretofore been released to W. H. Pemberton.

January 10, 1930, A. S. Clark, as assignee of Wholesalers Association of Tacoma, a corporation, com-

menced an action against Ralph G. Miller and other defendants, asking for judgment upon a promissory note for $9,280, executed by Long Lake Beach, a corporation; the plaintiff also asking for foreclosure of a mortgage covering the property here in question, which it was alleged had been executed by Long Lake Beach to secure payment of the promissory note. On the same day, an order was entered consolidating the action brought by Mr. Clark with the other action hereinabove referred to.

Messrs. Oneill and Moon filed their amended answer to the supplemental complaint of Messrs. Hilmes and Darwin, denying several of the material allegations thereof, and pleading affirmatively the institution of the action as first commenced, the execution of the extension agreement of May 4, 1928, and that, by this extension agreement, the action had been fully settled and was not susceptible of revival. They also pleaded that, according to the terms of the extension agreement, no right of action on the note and mortgage had accrued at the time of the filing of the supplemental complaint.

By another affirmative defense, they alleged the release to Mr. Pemberton, that the same was without consideration, and that, because of such release and the lack of consideration therefor, all of the land covered by the mortgage had been, in legal effect, released therefrom. By a final affirmative defense, they pleaded their ownership of certain lands covered by the mortgage and the extension agreement, and the tender made to the bank hereinabove referred to. Following their allegation of tender, defendants alleged as follows:

"That the defendants Oneill and wife and Moon and wife have at all times been ready, able and willing and have offered and do hereby offer to pay any sum which may be necessary to effect the release of their said

lands from the terms of the mortgage herein attempted to be sued upon.''

Nowhere in their answer did defendants suggest the idea that, because of the tender which they alleged and its refusal by the bank, they were entitled to a decree holding that their lands had been released from the lien of the mortgage.

January 15, 1930, Olympia National Bank filed in the consolidated proceeding its answer and cross-complaint, seeking by the latter foreclosure of a trust deed, dated June 7, 1927, covering the property here in suit, given it to secure the payment of a bond issue, the bank asking foreclosure in the principal sum of $29,170, together with trustee's and attorney's fees, interest and costs. Messrs. Hilmes and Darwin answered the cross-complaint of the bank, praying for an adjudication of priority over the bank's claim, which priority the bank in its cross-complaint conceded.

As above stated, Messrs. Oneill and Moon answered the supplemental complaint of Messrs. Hilmes and Darwin, but no process on the cross-complaint of Olympia National Bank was ever served upon Messrs. Oneill and Moon, and they did not plead thereto.

Messrs. Hart and Owings answered the supplemental complaint, alleging the allowance of their compensation in the receivership proceeding, and that the balance due them on account of these allowances was a lien on the real property in question, superior to the lien of the mortgage sought to be foreclosed in the supplemental complaint.

The action was called for trial May 20, 1930, the decree (which was not signed until March 16, 1931) reciting that plaintiffs (Messrs. Hilmes and Darwin) were represented by Messrs. Roberts, Skeel & Holman, William Paul Uhlmann, Esquire, and Messrs. Pember-

ton & Robinson, their attorneys; that defendants Oneill and Moon appeared by Messrs. Rummens & Griffin, defendants Owings and Hart by Frank C. Owings, Esquire, and defendants Roy D. Robinson and wife by Messrs. Pemberton & Robinson; the Olympia National Bank being represented by Messrs. Yantis & Brodie.

By the decree, defendants Oneill and Moon were adjudged to be the owners of the tracts which they claimed, respectively, free and clear from the lien of. plaintiffs' mortgage (plaintiffs to have the Moon tender, less costs); Messrs. Hart and Owings were adjudged to have first liens, in the sum of $600 each, upon the property (save a portion thereof which had been released from this lien). The complaint of A. S. Clark and the cross-complaint of Olympia National Bank were dismissed without prejudice. Messrs. Hilmes and Darwin were adjudged to have a valid lien under the mortgage upon all of the property, save the Oneill and Moon tracts and, of course, the Pemberton tract, and this lien was foreclosed and an order of sale provided for. As to other defendants, the action was dismissed with prejudice. The decree did not grant any judgment on the original note against Ralph G. and Grace Miller, the makers thereof, and as to them the action was dismissed, under the provision above referred to.

From this decree, Messrs. Hilmes and Darwin (who will hereinafter be referred to as the appellants) appeal, contending that the trial court erred in decreeing the release of the Oneill-Moon tract from the lien of their mortgage; in dismissing the action as to certain other defendants; in establishing the claim of Messrs. Hart and Owings as superior to the lien of appellants' mortgage; and in refusing to adjudge appellants' mortgage to be a first lien against all the property covered thereby, with the exception of the tract released

to Mr. Pemberton. Olympia National Bank has appealed from the decree, in so far as the same dismissed its cross-complaint.

Messrs. Oneill and Moon served and filed a notice of appeal from the portions of the decree to which they objected, and filed a bond pursuant to the notice. It must be held, however, that this appeal was abandoned, as the parties named appear in this court only as respondents, and in their brief ask for the affirmance of the judgment.

In this opinion, Mr. Oneill will be referred to as respondent. Respondents Hart and Owings will be jointly referred to as respondent Hart. Appellant Olympia National Bank will be referred to as the bank. Other parties will be referred to by name.

Respondent Hart has moved for an order striking the statement of facts filed by appellants, for the reason that no copy of the proposed statement of facts was served upon him by appellants. Respondent joins in this motion.

From the record, it appears that appellants prepared their proposed statement of facts and filed the same in the office of the clerk of the superior court for Thurston county within the period fixed by rule. A copy of this proposed statement of facts was delivered to respondent's attorney, as appears from the record thereof contained in the transcript, which is before us. A notice of the filing of the proposed statement of facts and of the service thereof on respondent's counsel was served on the attorney for respondent Hart four days after the filing of the proposed statement in the office of the clerk, and was seasonably served on the other parties entitled to such notice. The proposed statement of facts was later certified by the trial court, and is before us.

In moving to strike this statement of facts, respondent Hart relies upon Rem. Comp. Stat., § 389, the pertinent portion of which reads as follows:

"A party desiring to have a bill of exceptions or statement of facts certified must prepare the same as proposed by him, file it in the cause and serve a copy thereof on the adverse party, and shall also serve written notice of the filing thereof on any other party who has appeared in the cause."

Respondent contends that, under this section, the party appealing must serve a copy of the proposed statement of facts upon every adverse party who has appeared by separate counsel, and that the written notice of the filing of the proposed statement may be served only upon parties to the action who are not adverse to the party appealing.

In discussing this motion to strike, we assume that respondent Hart is as much an adverse party to appellants as is respondent. In support of his motion, respondent cites the case of *First National Bank of Aberdeen v. Andrews,* 11 Wash. 409, 39 Pac. 672, in which it was held that the statement of facts would be stricken because of the failure of the appellant to serve written notice of the filing thereof upon a party who had appeared in the action.

The case cited is not authority for respondent's contention, and we are not disposed to extend the rule therein laid down. We hold that, by filing the proposed statement of facts in the office of the clerk of the appropriate court, by serving a copy thereof upon an adverse party, and by serving notice of the filing of the proposed statement upon all other parties entitled to such a notice, the statement of facts, when properly certified and filed in this court, is not subject to be stricken. In our opinion, these steps having been taken, the provisions of the statute have been com-

plied with. The motion to strike the statement of facts is denied.

Respondent argues that, by executing the extension agreement above quoted, the then holder of the mortgage satisfied the same, and that appellants had no right to file their supplemental complaint herein based on the note and mortgage and continue this action. Careful reading of the extension agreement satisfies us that the same does not constitute in law a satisfaction of the mortgage, and that the right of action upon the note and mortgage still existed.

This being true, the filing of a supplemental complaint was permissible, provided that the same stated a cause of action by way of a breach of the contract consisting of the note, the original mortgage and the extension agreement. We are satisfied that the supplemental complaint stated such a breach, and that the allegations thereof are supported by the evidence. The trial court, therefore, correctly ruled that appellants were entitled to pursue their remedy in the pending action.

Respondent argues that, as the firm of Pemberton & Robinson appeared for the original defendants, Ralph G. and Grace Miller, the makers of the note and mortgage sued upon, and filed an answer on behalf of these defendants, and as the statement of facts shows that, on the trial of the action, the firm of Pemberton & Robinson appeared, with other counsel, as attorneys for appellants as substituted plaintiffs, and as the decree recites the joint appearance of this firm with others as attorneys for appellants, and as the evidence shows that Mr. Pemberton is one of the owners of a considerable portion of the land covered by the mortgage, a part thereof in severalty and, as to some of the remainder, as a tenant in common, and as the evidence strongly indicates that Mr. Pember-

ton is to some extent interested with appellants as one of the owners of the mortgage sought to be foreclosed, it should be held that appellants' position lacks sufficient equity to entitle them to relief. Respondents also argue that the record shows that, because of Mr. Pemberton's interest in the mortgage, a merger has taken place, and that the mortgage has ceased to exist as a separate entity which can be recognized in law.

As above stated, the decree awards no judgment against defendants Miller. They are nowhere named therein. At the opening of the trial, the statement of facts recites the appearance of H. C. Moon, of respondent Hart, of R. D. Robinson and wife, and of Olympia National Bank, but is silent as to any appearance by defendants Miller. Under these circumstances, and particularly in view of the fact that the decree awards no judgment against defendants Miller, we are unable to see that, giving respondent's contention all possible weight, the record discloses any facts concerning either Mr. Pemberton's admitted or supposed interest in any phases of the subject matter of the litigation, or his appearance as attorney for any of the parties, of which respondent can complain, or which it should be held, as matter of law, resulted in a situation which calls for the denial of any of the relief sought by appellants.

In their brief, respondent's counsel do not contend that they suggested to the trial court that any evidence in the case in connection with the matters now under discussion entitled respondent to any specific relief, nor do they call our attention to any request which they made to the trial court that it take any action or make any ruling in connection with these matters. Respondent's counsel simply argue that appellants' case lacks equity. It may be noted, in passing, that, in the notice of appeal served by respondent, R. D.

Robinson is named as attorney for Mr. and Mrs. Miller, and in that capacity acknowledged service of the notice.

In regard to any alleged merger, we find no basis in the evidence for holding that such has taken place. The merger of an equitable with a legal title is largely a matter of intention. *Hitchcock v. Nixon,* 16 Wash. 281, 47 Pac. 412; *Stewart v. Eaton,* 20 Wash. 378, 55 Pac. 314; *Chase National Bank v. Hastings,* 20 Wash. 433, 55 Pac. 574, 99 Am. St. Rep. 161. It is also true that, as a general rule, the legal estate should be coextensive with the equitable estate, which is not the situation in the case at bar. 5 Thompson on Real Property, § 4681, p. 844. The doctrine of a merger was considered by this court in the recent case of *Anderson v. Starr,* 159 Wash. 641, 294 Pac. 581, in which this court approved the doctrine that equity does not favor mergers to the prejudice of the owner of the equitable title or lien, that his intention should be given great weight, and that he is presumed to have intended that which is most to his advantage.

The record clearly shows that appellants, if not the owners of the entire title to the mortgage sued upon, have a very considerable interest therein, which is prior to the interest of any other person. We find in the record no sufficient basis for respondent's contention that it should be held, as matter of law or equity, that a merger has taken place which frees respondent's property from the lien of the mortgage herein sought to be foreclosed.

Appellants' first assignment of error is based upon the ruling of the trial court to the effect that, by respondent's offer to deliver money to the Olympia National Bank for the benefit of the holder of the mortgage sought to be foreclosed herein, and because of the bank's refusal to accept the money, respondent's property was, in legal effect, released from the

lien of the mortgage. The paragraph of respondent's amended answer referring to this matter has already been quoted. In his original answer, respondent and his wife, after pleading the tender, alleged that they had

" . . . tendered and offered to pay any sum in addition thereto which might be found necessary for the purpose of effecting such release, and have at all times been ready, willing and able so to do."

Considering the legal effect of the tender made by respondent, we are convinced that the trial court erred in holding that, because of the refusal of this tender by the bank, the tract of land owned by respondent should be freed from the lien of the mortgage.

It is true that one having an interest in mortgaged property, being entitled to pay the mortgage and making a tender of a sufficient amount, all other circumstances being in his favor, may, his tender having been refused without justification, obtain a decree clearing his property from the lien of the mortgage. *Thomas v. Seattle Brewing & Malting Co.*, 48 Wash. 560, 94 Pac. 116, 125 Am. St. 945, 15 Ann. Cas. 494, 15 L. R. A. (N. S.) 1164. In the case of *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998, in which it was contended that the lien of a mortgage had been destroyed by a tender, this court considered its opinion in the case of *Thomas v. Seattle Brewing & Malting Co., supra,* and refused to extend the doctrine therein laid down, and remarked upon the invariable tendency of courts to limit the doctrine of release by tender.

In the case at bar, the tender was made to and refused by an agent. Respondent calls attention to the fact that the tender does not demand an immediate release of the mortgage. The description of the land for which the release was demanded by respondent was

somewhat vague, the tract being described by metes and bounds and concluding, "less .0462 of an acre and being 13.25 acres." It seems to be admitted that the land excepted was that tract contracted to be conveyed by respondent to respondent Moon, and that the true extent of the Moon tract was 0.462 of an acre, as described in Mr. Moon's tender and demand made earlier on the same day respondent made his demand.

The right of respondent to make the tender is clear, but we are satisfied that the refusal of the bank to accept the same, under the circumstances here shown, is not sufficient to entitle respondent to a decree clearing his land from the mortgage lien. Such relief is most drastic, and, to obtain the same in an equitable action, the right thereto must clearly appear. As was said in the case of *Easton v. Littooy*, 91 Wash. 648, 158 Pac. 531,

"Undoubtedly, also, where, as in this state, a mortgage is a mere lien, tender by the mortgagor at any time before suit has the same effect, nor is it necessary in either case that the tender be kept good by bringing the money into court. *Thomas v. Seattle Brewing & Malting Co.*, 48 Wash. 560, 94 Pac. 116, 125 Am. St. 945, 15 L. R. A. (N. S.) 1164. This rule, though logical and well supported by authority, is a harsh one, penal in its nature, and the courts have shown no disposition to extend it. *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998. The principle should not be pressed beyond its strict limits. *Harris v. Jex*, 66 Barb. (N. Y.) 232. In order to discharge the lien of the mortgage, the proof must be clear that the refusal was palpably unreasonable, absolute, arbitrary and unaccompanied by any bona fide though mistaken claim of right."

In his pleadings, respondent apparently at all times recognized his obligation to keep his tender good, and to himself do equity, and we are satisfied that, while it was not necessary, in order to preserve his rights,

that respondent tender the money into court, his property should be freed from the lien of the mortgage only upon payment of the amount due up to the time of the tender. Interest, however, should not be computed after this date, although, because of his contention upon the trial, costs should be taxed against respondent. In this connection, the opinion of the supreme court of Utah in the case of *Brunswick Realty Co. v. University Inv. Co.,* 43 Utah 75, 134 Pac. 608, and the text of Hunt on Tender, page 415, are of interest.

It would seem that appellants were entitled to a decree adjudging the interest in the property of certain parties defendant to be inferior to appellants' interest, and we conclude that the court erred in dismissing the action as to such parties with prejudice.

In regard to respondent Hart, we conclude that the court also erred in establishing the claims of the receiver and his counsel as superior to the lien of appellants' mortgage. Respondent Hart was appointed receiver of the property in another action, and no element of estoppel, in so far as appellants or their predecessors in interest are concerned, is called to our attention.

Neither does respondent Hart come within the rule laid down in the cases of *Bank of California v. Clear Lake Lumber Co.,* 146 Wash. 543, 264 Pac. 705, and *Agricultural etc. Corporation v. McKenzie,* 157 Wash. 597, 289 Pac. 527. In the first case cited, it was held that certain expenses of the receivership, apparently the wages of watchmen, should be established as a lien upon the corpus of the receivership estate prior to a mortgage thereon covering both real and personal property. It was held that the service inured to the benefit of the mortgagee, which was undoubtedly true, and that, for this reason, the amount paid for caring

for the property constituted a claim senior to the mortgage. In the latter of the two cases cited, the property which came into the custody of the receiver consisted of dairy stock, and it was evident that the services rendered by the receiver were for the benefit of the holder of the mortgage and protected his security.

In the case at car, appellants' mortgage covers real estate only, and we are unable to find from the record any benefit which accrued to the mortgaged property because of the receivership, or that the services of the receiver or his attorney inured to the benefit of the mortgage to even the least extent. The trial court accordingly erred in establishing liens for the receiver and his counsel as claims against the real estate prior to the lien of appellants' mortgage. *Lammon v. Giles,* 3 Wash. Ter. 117, 13 Pac. 417.

In regard to the appeal of Olympia National Bank, we fail to find in the record justification for the decree of the trial court dismissing the bank's cross-complaint. Appellants had answered this cross-complaint and, while it is true that no service of summons in connection with the cross-complaint appears to have been made upon respondent, issues had been regularly made up thereon as between appellant bank and appellants. The bank's action, therefore, should not have been dismissed.

As to respondents Moon, the decree correctly determined their rights.

The decree appealed from is reversed, with instructions to proceed in accordance with the views herein expressed.

TOLMAN, C. J., MAIN, and MILLARD, JJ., concur.